LINTON'S LUNCH

v.

The RESTAURANT GUILD CHAIN STORE EMPLOYEES' LOCAL #138 AFL–CIO.

Civ. A. No. 35154.

United States District Court
E. D. Pennsylvania.

Aug. 25, 1964.

Saul, Ewing, Remick & Saul, Norman R. Bradley, Philadelphia, Pa., for plaintiff.

I. Herman Stern, Philadelphia, Pa., for defendant Local 138.

KRAFT, District Judge.

This is an action by an employer (Linton) under § 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, for a declaratory judgment that, under the terms of its collective bargaining agreement with defendant Union (Local 138), it is not obliged to arbitrate certain disputes referred to in the record as Grievance IV and Grievance V. The case is before us on cross-motions for summary judgment.

Grievance IV arose when Linton reduced, or proposed to reduce, the presently scheduled work week of certain regular employees by some ten hours.

The agreement sets out a detailed grievance procedure with a provision for arbitration of any grievance or dispute arising "under this contract". Our function in cases of this character has been stated in United Steelworkers v. American Mfg. Co., 363 U.S. 564 (1960) at p. 567, 80 S.Ct. 1343, at p. 1346, 4 L.Ed.2d 1403:

"The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment, and

all that it connotes that was bargained for.

"The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious. The processing of even frivolous claims may have therapeutic values of which those who are not a part of the plant environment may be quite unaware."

 Local 138 relies principally on the final sentence of Article IV, Section 2, of the contract: "It is the Company's intention not to reduce the presently scheduled work week of regular employees." It seems very plain that Local 138 is "making a claim which on its face is governed by the contract," and is therefore arbitrable.

Linton contends that Local 138's position "does violence to the English language and to the difference in meaning of 'intention', which is a unilateral expression of one party's state of mind at that time, as contrasted with the vastly different meaning of a legally binding 'agreement' or contract bilaterally creating future rights and obligations." We are alive to the distinction. However, it is the function of a collective bargaining agreement to state "the rights and duties of the parties" (United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 578, 80 S.Ct. 1347, 1351, 4 L.Ed.2d 1409), and not to express unilateral states of mind. Moreover, that same case warns the court against becoming "entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator."

 Both parties rely to considerable extent on the bargaining history as testified to in the depositions. That we may

not use this bargaining history to declare this grievance non-arbitrable is established by the fact that, as is apparent from accompanying concurring and dissenting opinions, the majority in Warrior & Gulf, faced with having to determine whether an exclusionary clause prevented arbitration of a subcontracting grievance, refused even to mention bargaining history that showed repeated unsuccessful attempts by the union to secure contractual restrictions on subcontracting.

The Court of Appeals of this circuit dealt with the same question in Ass'n. of Westinghouse Sal. Emp. v. Westinghouse E. Corp., 283 F.2d 93 (3rd Cir. 1960), which involved construction of a contractual provision that an employee, in given circumstances, "*may* be returned to the bargaining unit" (Emphasis supplied). In refusing to consider the bargaining history, the Court stated (283 F.2d p. 95):

"The Company says that the negotiation history prior to the 1954 agreement which brought this word 'may' into the language shows that the parties intended to have the conditions of the return of the employee subject wholly to its judgment. This argument is a perfectly permissible one to make but it certainly, by the directions which the Supreme Court has given, is one with which the arbitrator must labor and not the judge. It may or may not be that the Company's contention is correct. The problem is the interpretation to be given the contract. That interpretation does not call for adding to or subtracting anything from it. The question arises directly from the language used and it will be the function of the arbitrator to hear the evidence from both sides and make a decision. The effect of an arbitration agreement would certainly be sharply limited if every time a question of the meaning of the agreement arose the problem became one for a court and not for an arbitrator. This is just the thing which the Supreme Court has told us to avoid."

See, also, International Union of Elec. Radio & Mach. Wkrs. v. General Elec. Co., 332 F.2d 485 (2d Cir. 1964).

We conclude, therefore, that Grievance IV arises under the contract, and is arbitrable.

Grievance V arose when Linton rotated, or proposed to rotate, the assignment of job stations to the alleged detriment of certain employees. Local 138's chief reliance is on Article V, Section 1, of the contract:

> "The Company agrees to recognize the principle of seniority with respect to layoff, rehiring after lay-off, promotions and demotions. The policy of the Company is to promote and to give job security in proportion to length of service, * * *."

■ This grievance involves only waitresses, a job classification in which employees receive, in addition to wages, customer gratuities. Local 138 asserts, inter alia, that some stations are recognized as superior to others in the matter of gratuities, and contends that rotation in station assignments violates the seniority provision. We think it may fairly be said that this grievance is one arising under the contract, and thus subject to arbitration. All doubts should be resolved in favor of coverage. Warrior & Gulf, supra, 363 U.S., at p. 583, 80 S.Ct. 1347.

Linton insists that so-called rotation is in reality a transfer, and relies on Article VI of the agreement which provides that Linton "shall have the absolute right without recourse to the grievance procedure of making transfers of employees within the Company to other jobs of no lesser pay in the same classification in the same shift." This contention poses a question of contract interpretation which is not within our province.

Linton further contends that the assignment of job stations falls within its right of management and control, and points to a provision in Article I of the contract:

> "Nothing in this contract, however, is intended to or is to be construed in any way to interfere with the right of the Company to manage and to control the business of the Company and to enforce reasonable regulations for the control and discipline of the employees, pursuant to this contract."

Since the contract reserves to Linton only those rights of management and control which it has not bargained away, Linton's contention is but another way of saying that no provision of the contract restricts Linton's right to "rotate",—a contention that goes to the merits and is properly directed to the arbitrator. For a discussion of an analogous contention see Warrior & Gulf, supra, 363 U.S., beginning at p. 583, 80 S.Ct. 1347.

For the reasons stated, we think both grievances are arbitrable. Our conclusion is fortified by an unconditional "no strike" clause in Article XIII, Section 1, of the contract. "There is no exception in the 'no strike' clause and none therefore should be read into the grievance clause, since one is the quid pro quo for the other." United Steelworkers v. American Mfg. Co., 363 U.S. 564, 567, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960).

### ORDER

Now, August 25th, 1964, it is ordered and decreed that:

1. Plaintiff's motion for summary judgment is denied.

2. Defendant's cross-motion for summary judgment is granted, and judgment is entered for defendant declaring that Grievance IV and Grievance V are arbitrable under the provisions of the collective bargaining agreement between the parties.

3. The injunction pendente lite heretofore entered is vacated.