NAVAJO FREIGHT LINES, INC., a New Mexico Corporation, Plaintiff,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Defendant.

LINE DRIVERS LOCAL NO. 961, Plaintiff,

v.

NAVAJO FREIGHT LINES, INC., Defendant.

Civ. A. Nos. C–693, C–892.

United States District Court
D. Colorado.
Nov. 26, 1969.

See also D.C., 291 F.Supp. 908.

Sheldon E. Friedman, Stanton D. Rosenbaum, Denver, Colo., for plaintiffs.

John A. Criswell, Englewood, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

CHILSON, District Judge.

C–693 is an action under Section 301 of the Labor Management Relations Act (29 U.S.C.A. § 185) for breach of a no-strike clause in collective bargaining agreements between the plaintiff employer and the defendant union. Action C–892 was brought by the local union to enjoin the defendant from implementing a change in its trucking operations, authorized by a "Multi-Conference Change of Operations Committee", which purported to act pursuant to the same collective bargaining agreements involved in C–693. By stipulation of the parties, the two actions were consolidated.

The matter presently before the Court is a motion by the local union for a preliminary injunction to enjoin the change of operations referred to above. Hearing was had on the motion on September 12, 1969, and continued to October 1, 1969. The Court, after hearing the evidence and argument of counsel, received written briefs of the parties, took the matter under advisement and is now duly advised.

Navajo and Local 961 entered into two collective bargaining agreements, covering the period from April 1, 1969, through March 31, 1970. One agreement (Exhibit A) is entitleu, "National Master Freight Agreement" and the second, (Exhibit B) "Western States Area Over-The-Road Motor Freight, Supplemental Agreement".

The first agreement is referred to as the "Master Agreement" and the second as the "Supplemental Agreement".

The reasons for two agreements, instead of one, is because of the basic scheme of the collective bargaining agreements which provide:

1. The division of the United States into certain specified areas called "Conference Areas".

2. A Master Agreement which applies uniformly throughout the United States and in every conference area.

3. Supplemental Agreements designed to permit local unions within a particular conference area to provide grievance machinery for the determination of local, state and conference area grievances through committees on which the employer and the local union have equal representation; but subject to and controlled by the Master Agreement.

4. In those cases where local unions in one conference area may be affected by disputes in another, provision is made for representation of those local unions so affected.

Local Union 961 is in the "Western States Conference" and it and Navajo are controlled by the Master Agreement and the Western States Area Supplemental Agreement.

Changes of operations by the employer are recognized by both the Master Agreement, (Article 8(e)) and the Supplemental Agreement, (Article 42, Section 4) as questions for determination under those agreements.

The problem which has led to this litigation is treated by the parties as a "Change of Operations" problem.

The dispute can be briefly summarized. In the fall of 1967, Navajo sought to abolish one of two "turn-around" runs between Denver and Colorado Springs and Denver and Pueblo. This request was submitted to the Joint Western Area Committee's Sub-Committee on Change of Operation and was denied. The Joint Western Area Committee is one of the grievance committees set up under the Supplemental Agreement. (Article 42, Section 2).

In the spring of 1968, Navajo again requested the same change. The request was referred to the Colorado-Wyoming State Committee, one of the grievance committees provided for in the Supplemental Agreement, (Article 42, Section 1) which deadlocked, and Navajo failed to appeal to the Joint Western Area Committee which it had the right to do.

In June 1969, Navajo requested the National Grievance Committee's Secretary to assign its proposal to abolish both "turn-around" runs to "the next area conference Change of Operations Committee". The Co-Chairman of the National Grievance Committee assigned the matter to be heard by a Multi-Conference Change of Operations Committee, rather than the Joint Western Area Committee.

The Multi-Conference Change of Operations Committee granted Navajo's request. It is the implementation of this change which the local union 961 seeks to enjoin on two grounds:

1. That the Joint Western Area Committee, acting through its Sub-Committee on Change of Operations, had denied Navajo's request to abolish one of the two "turn-around" runs; that this decision was final and binding upon the parties and could not be reviewed in subsequent proceedings, either by the Joint Western Area Committee, or by any other committee.

2. That the Multi-Conference Change of Operations Committee had no jurisdiction to act in the dispute because both the provisions of the Master Agreement and the Supplemental Agreement vest in the Joint Western Area Committee the sole and exclusive authority to initially determine Change of Operations cases; that a Multi-Conference Committee can be convened only after a Joint Area Committee cannot reach a decision and a strike is threatened, which might involve more than one conference area; and that a Multi-Conference Committee acts solely as an appeal body from the Joint Area Committees.

Neither the Master nor the Supplemental Agreement expressly provides for the appointment of a Multi-Conference Change of Operations Committee. Arti-

cle 8(e) of the Master Agreement provides:

"Present terminals, breaking points, or domiciles shall not be transferred or changed without the Employer first having asked for and received approval from an appropriate committee on change of operations, the members of which shall be appointed by the Joint Area Committee."

Article 42, Section 4 of the Supplemental Agreement provides for submission of the change of operation to:

"* * * the Sub-Committee on Change of Operations, the members of which shall be appointed by the Joint Western Area Committee * * *."

Both the National Grievance Committee and the Joint Western Area Committee have adopted rules to govern procedure in changes of operation cases which affect local unions in more than one conference area.

The rules adopted by the National Grievance Committee provide:

"(A) Changes of Operation filed under Article 8(e) of the National Master Freight Agreement involving members of local unions which are located in more than one conference area, shall be filed with both the union and employer-secretaries of the National Grievance Committee. * * *

"(B) The employer and union secretaries of the National Grievance Committee shall jointly assign the Change of Operation to one of the conference area Change of Operations Committees. * * *.

"(C) The rules of procedure of the conference area Change of Operations Committees shall be followed by all parties, but equal employer and union representation from the other affected conference areas shall be allowed on such Multi-Conference Change of Operations Committees. The employer and union Change of Operations Committee chairmen shall have the right to designate the respective committee members consistent with the above."

The rules adopted by the Joint Western Area Committee provide:

"If the proposed Change of Operations involve local unions from one or more conference areas in addition to the Western Conference, the union secretary of the JWAC shall give timely notice of the JWAC meeting date to such other local unions, and union representatives from such other conference areas shall be allowed on the JWAC Change of Operations Committee hearing such case. If necessary, the employer-representative on the JWAC Change of Operations Committee may be increased so that there is equal representation. The employer and union JWAC Change of Operations Committee chairmen shall have the right to designate their respective committee members."

■ These two procedures for consideration of changes in operation affecting more than one conference area are in obvious conflict. The local union requests this Court to interpret the Master and Supplemental Agreements to determine whether or not the rules established by the National Grievance Committee and the action of the Multi-Conference Change of Operations Committee pursuant to these rules are valid.

The Court concludes that it cannot and should not interfere. It is clear that the intent and purpose of the collective bargaining agreements is to settle grievances and questions of interpretation of the collective bargaining agreements by mutual agreement through the use of committees on which the employer and the union have equal representation.

Article 8(a) of the Master Agreement provides:

"All grievances or questions of interpretation arising under this Master Agreement or Supplemental Agreements thereto shall be processed as set forth below."

(Then follows the procedures by which grievances or questions of interpretation are determined by committees hav-

ing equal representation of the employer and the union.)

Article 8(a) (2) of the Master Agreement provides:

"If the National Grievance Committee is deadlocked on the disposition of the dispute then either party shall be entitled to all lawful economic recourse to support its position in the matter."

Article 8(d) of the Master Agreement provides:

"In the event of strikes, work stoppages, or other activities which are permitted in case of deadlock, default, or failure to comply with majority decisions, *no interpretation of this Agreement by any tribunal shall be binding upon the Union* or affect the legality or lawfulness of the strike *unless the Union stipulates to be bound by such interpretation, it being the intention of the parties to resolve all questions of interpretation by mutual agreement.* Nothing herein shall prevent legal proceedings by the Employer where the strike is in violation of this Agreement." (Emphasis supplied.)

Article 43(d) of the Supplemental Agreement provides:

"It is agreed that all matters pertaining to the interpretation of any provisions of this Agreement may be referred by the State Secretary for the Union or the State Secretary for the Employers at the request of either the Employers or the Unions, parties to the issue, with notice to the other Secretary, to the Joint Western Area Committee at any time for final decision. At the request of the Company or Union Representative, the Joint Western Area Committee shall be convened on seventy-two (72) hours notice to handle matters so referred."

The foregoing quotations from the agreements are indicative of the purpose and intent of the parties that interpretations of the agreements were to be made only by mutual agreement through committees as set forth in the agreements.

This method of settlement of grievances and interpretations of agreements is not substantially different, in legal effect, from those cases where the collective bargaining agreements submit their disputes to arbitrators.

A line of cases has established the principle that the Courts must leave to the arbitrator in labor-management relations cases, all matters which by the terms of the agreements, the parties have agreed will be submitted to an arbitrator for resolution. See United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 1363, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); John Wiley & Sons v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964).

■ These cases clearly spell out a policy that the Courts should not interfere when the parties to a collective bargaining agreement have established procedures for the settlement of disputes and for the interpretation of the agreement in its application to questions which may arise.

The Court concludes that the motion for preliminary injunction should be denied.

It is therefore ordered that the local union's motion for preliminary injunction be and the same is hereby denied.