Emilio Nunez, J.
I will dispose of the countermotion of the defendants first.' The cross motion of the defendants, brought on by order to show cause dated September 12, 1967, asked the court to dismiss the complaint and to' close the schools operated by the Board of Education until such time as the Board of Education and the United Federation of Teachers have resolved their dispute, and suggesting for the closure to last for a period of approximately one week and then that the matter come up before this court again.
The motion to dismiss the complaint is, in all respects, denied. The application to close the schools comes from an obviously interested party, the defendant in this action. It is evident to the court that the Board of Education seeks to keep the schools open in order to strengthen its position vis-a-vis the union; and it is, likewise, apparent that it is the object or the purpose of the union to close the schools so that such a closing would strengthen its hand in dealing with the Board of Education.
It seems to me that if the children are in danger, if there is any hazard in the operation of the schools, that a parents’ organization or a taxpayer, on behalf of himself or the students, or any disinterested third party would be in a much better position to bring an action asking for that relief, with proper proof, than the interested litigant to this dispute, the Teachers ’ Union.
In any event, no adequate proof has been submitted to me warranting the relief requested, and the request to close the schools is, likewise, denied.
This brings me now to the application made by the Board of Education for a temporary restraining order and preliminary injunction. It is an undisputed fact that the school year began on Monday of this week, September 11, 1967. It is also a fact that the teachers had an agreement with the Board of Education, which expired June 30, 1967; and that the union officers and the Board of Education have been engaged in an attempt to negotiate a new contract for many months.
It is a conceded fact that while the schools opened on Monday, a very substantial number of teachers did not appear in the schools, and have not been teaching the children.
It is claimed, and I will assume it for the purpose of this proceeding, that these teachers have executed their resignations, and that these resignations are now in the hands of the defendant Teachers’ Union. The fact is that the great majority, said to be around 80 or 90% of the teachers, are not in school, and are not teaching the children.
*643 Mr. Shanker,.the president of the Teachers’ Union, has stated on many occasions that the contract with the Board of Education expired on June 30, and that the teachers would not go back to work unless they had a new contract.
The proof before me is ample to justify the conclusion, and I find, that the teachers have stayed out as a means of enforcing their demands for a better and improved contract, which encompasses salary, teaching conditions, class sizes, and other disputes between them and the Board of Education, and that they have stayed out and have not returned to work on September 11 because they have been advised to do so by their union officials.
I also find that these resignations were executed and delivered to the union by the teachers at the union’s request and as a part of their strategy and plan in dealing with the Board of Education. Of course, every one has the right to resign his position and not return to work, and this includes the teachers. No court, certainly in this country, can compel a teacher to work if he or she did not wish to work. I find, however, that in this case the teachers did not execute these resignations for the purpose of not returning to work and leaving the employ of the Board of Education. They executed these resignations at the union’s urging to compel their employer to accede to their demands and as a concerted stoppage of work. It was done in an attempt to evade the provisions of the Civil Service Law, the common law and the decisional law, all of which from time immemorial, forbids and makes illegal a strike on the part of public employees.
The latest statutory enactment defining the term ‘1 strike ’ ’ is contained in section 201 of the Civil Service Law, which has been referred to by counsel as the Taylor Law. In subdivision 10 of section 201 the term “ strike ” is defined as meaning “ any strike or other concerted stoppage of work or slowdown by public employees ’ ’.
Section 210 of the same law provides as follows: “No public employee or employee organization shall engage in a strike, and no employee organization shall cause, instigate, encourage, or condone a strike ”.
There have been any number of court decisions defining strike as “ a concerted work stoppage; a combination to obtain higher wages and shorter hours and better working conditions; a cessation of work as a means of enforcing compliance with some demand upon the employer ”, and similar definitions.
The dictionary, by the way, definition of “ strike ” is “ a concerted stopping of work, or withdrawal of workers’ services as to compel an employer to accede to workers’ demands, or in protest against terms or conditions imposed by an employer ”.
*644 I do not think that anyone who has followed the dispute between these two parties, and the actual situation in the public schools of New York City during the last three days, can come to any conclusion other than that the teachers are out on strike, and the court so finds.
This dispute, of course, has become an emotional issue. My function at this time is limited to deciding the legal issue before me, and that is, whether or not the Board of Education is entitled to a temporary restraining order and a preliminary injunction because of this illegal strike.
It is very unpleasant for me to make this finding but I, as all of us, am bound by the law. The court has received any number of communications from third parties seeking to tell the court what to do, and condemning one side and the other. It is very regretful to the court that both parties have chosen to continue this dispute rather than put an end to it by the means suggested by the court, or by any other means, and the court hopes that once Dr. Donovan and Mr. Shanker leave this courtroom this afternoon, if they have not already done so, they will sit down and continue their wholehearted efforts to arrive at a solution of the impasse.
I have studied carefully the contention of the defendant union that the punitive provisions of the Taylor Act may not be applied because the machinery provided for an impasse has not been followed. The law referred to is a new codification of old law, in part, and some new provisions. The impasse procedure provisions are new. Obviously, the machinery provided by this law could not be utilized to the full because this law, most of it, went into effect only on September 1, 1967, and the law itself was adopted in April of 1967; the budget of which this new law speaks was adopted as early as January 1, 1967.
It has been established, however, that irrespective of the fact that no money for extraordinary salary increases was provided in the budget, a very substantial sum of money, running in excess of 100 million dollars, has been made available to provide for increased salaries for the teachers; so that the fact that the possible increase in salaries was not budgeted is not an insurmountable obstacle.
I am, therefore, constrained, and I do hereby declare, that the teachers’ activities constitute a strike; that they are on strike against the Board of Education; that they are public employees, and a public employee, when he strikes, strikes against Grovernment itself. The strike is illegal, and the teachers and the union are engaging in illegal activities in continuing this strike.
*645 The temporary restraining order as outlined in the order of this court, dated September 10, and signed by Mr. Justice Gold, is, in all respects, continued as well as the preliminary injunction contained in that temporary order.
You may submit an order on notice, or, if both parties wish to, if you waive notice, if you have it right now, I will be glad to sign it so that the union may proceed to appeal as quickly as it can.