Joseph Liff, J.
The plaintiffs seek an injunction to prevent the defendants, the faculty of the Nassau Community College, the Faculty Senate and the officers of the organization, from continuing what plaintiffs describe as a strike and directing the defendants to perform their duties in accordance with the program adopted by the administration of the college.
The response of the defendants is that they are performing their duties in the “ normal manner ”, that is, pursuant to the program under which they were teaching in the last academic year and under the collective bargaining agreement which expired on August 31, 1971. Prior to the expiration of that contract and in the expectation of arriving at terms for its renewal the parties had begun negotiations which proved unsuccessful.
There are arguments to support the respective positions of the parties. Unfortunately, in spite of the efforts made in good faith by all concerned, it has not been possible to reconcile their differences. It appears that with a few exceptions the teachers were on a 12-hour contact-teaching program last year. In the last legislative session a bill (Sen. Int. No. 6299) was introduced and passed both houses which would, at least indirectly, have imposed -an obligation on the county to adopt a 15-hour contact-teaching program.[1] The bill was vetoed by the Governor (July 6, 1971, Veto Memo 287). Meanwhile, in anticipation of the passage of the bill, the school administration adopted a 15-hour program. Additional student registrants were accepted into the school program -and it was necessary to provide for the increased number of hours. Apparently departmental heads in the school were consulted but the teachers resented having the additional burden placed on them and with some justification claimed that it was academically unsound.
The teachers claimed too that they were not required to teach more than 12 hours under the old contract. That is true but it is equally true that the school administration could have imposed more hours but refrained from doing so (Faculty Handbook, Nassau Community College 1971, pp. 99,160, 161)..
We cannot agree with the defendants’ interpretation of the phrase “normal manner ” which is used in the statute (Civil Service Law, § 210, subd. 2, par, [b]). That section prohibits a strike (subd. 1) and then goes on to clarify what is meant by a strike -and recites that absence from work or abstention wholly *795 or in part from the full performance of duties in the normal manner creates a presumption that the strike exists (suhd. 2, par. [b]). There is no doubt the teachers have refused to work the additional three hours. The phrase “normal manner” as we construe the statute does not mean length of hours of employment but rather the fashion in which the duty is discharged.
The foregoing discussion was for the purpose of describing the nature of the controversy. However, it is not for us to determine the merits of the dispute but solely to find whether (a) they are public employees; (b) whose collective bargaining agreement. has expired; and (c) are they engaged in a strike. All three questions must be answered in the affirmative.
The defendants have conceded that they are public employees. That admission was not necessary in view of the definition of ‘[1] public employee ’ ’ contained in subdivisions 7 and 8 of section 201 of the Civil Service Law. Since the teachers have refused to work the hours designated by the administration the conclusion is inescapable that within the framework of the statutes they are engaged in a strike and the court is left no choice but to issue the injunction (Civil Service Law, § 211).
The design of article 14 of the Civil Service Law (“ Public Employees ’ Fair Employment Act ’ ’, commonly referred to as the Taylor Law) is to “ promote harmonious and cooperative relationships between government and its employees and to protect the public by assuring, at all times, the orderly and uninterrupted operations and functions of government. ’ ’ (Civil Service Law, § 200). The statute expressly gave employees the right to organize and be represented in collective bargaining and required the State and its political subdivisions to negotiate with and make written agreements with their employees and among other things recited (subd. [e]) that the prohibition against strikes by such employees and the remedies for violations were continued. The Governor, in his remarks ápproving the bill, noted that the new procedures would replace the Condon-Wadlin Law and afford better means for resolving disputes in the public sector although it continued the prohibition against strikes (Approval message, April 21,1967, McKinney’s 1967 Sess. Laws of N. Y., p. 1527). The strike by public employees is illegal even in the absence of a statute prohibiting the same (Board of Educ. of City of N. Y. v. Shanker, 54 Misc 2d 641, 643, affd. 29 A D 2d 634).
No one has an absolute right to strike, and strikes by public employees may be prohibited without violating either the State *796 or Federal Constitution (City of New York v. De Lury, 23 N Y 2d 175). In laying to rest any challenge to the constitutionality of the Taylor Law the court in De Lury said (p. 188): ‘ ‘ subdivision 1 of section 210 of the Civil Service Law, designed to prevent the paralysis of Government, offends against no constitutional guarantee or requirement. Self-interest of individual or organization may not be permitted to endanger the safety, health or public welfare of the State or any of its subdivisions. ’ ’ (See, also, Rankin v. Shanker, 23 N Y 2d 111; Matter of Zeluck v. Board of Educ., 62 Misc 2d 274, affd. 36 A D 2d 615.)
The defendants’ counsel would justify his clients’ action by charging the plaintiffs with unfair labor practices. He seeks support for that position in Mastro Plastics Corp. v. Labor Bd. (350 U. S. 270). That decision has no application to the situation here for at least the following reasons: (a) that controversy did not involve public employees; (b) it was in an industry affecting interstate commerce thus bringing into play the Labor-Management Relations Act — 1947; and (c) a statute prohibiting the strike was not involved. The court in its opinion said (p. 278): “ In the absence of some contractual or statutory provision to the contrary, petitioners’ unfair labor practices provide adequate ground for the orderly strike that occurred here.” Need we add that the Taylor Law as a statutory provision comes within the exception last expressed.
The defendants cite to the court Steelworkers v. American Mfg. Co. (363 U. S. 564), Steelworkers v. Warrior & Gulf Co. (363 U. S. 574), Steelworkers v. Enterprise Corp. (363 U. S. 593). None of these applies here. The Labor-Management Relations Act of 1947 (U. S. Code, tit. 29, § 141 et seq.) was designed to promote the free flow of commerce and was enacted under the Interstate Commerce clause of the United States Constitution. In fact the term “ employer ” defined in that act (§ 152, subd. [2]) expressly excludes a State or political subdivision thereof.
The Court of Appeals, pointing out the limitations on the comparisons which can be drawn between the Taylor Law and State and Federal Labor Relations Acts, said: ‘1 While it is true that the new statute governing State and municipal employment draws heavily on the statutes regulating private employer-employee relations, the differences between the statutes are marked and undoubtedly reflect the legal and economic differences between public and private employment.” (Matter of Civil Serv. Employees Assn. v. Helsby, 21 N Y 2d 541, 546.) The defendants as public employees are subject to the Taylor Law *797 and are ‘ ‘ specifically excluded from coverage under both Federal and State law ”. (Regional Tr. Serv. v. Local Div. 282, 64 Misc 2d 865, 874).
Our esteemed colleague, Mr. Justice Emilio Nunez, in similar circumstances said; ‘1 It is very unpleasant for me to make this finding but I, as all of us, am bound by the law.” (Board of Educ. of City of N. Y. v. Shanker, supra, p. 644).
After many hours devoted to an effort to resolve the impasse, I echo his sentiments.
I am constrained to find that the teachers, who are public employees, are engaged in a strike and must be enjoined from continuing their illegal activities. Nevertheless, at the request of the parties, the court is available to participate in further discussions.
The relief requested by the plaintiffs is granted.

. Contact-teaching is the time actually spent by a teacher in the classroom. Of course, in addition, the teacher spends a number of hours outside the classroom in the performance of his duties, e.g., seeking new course material, committee meetings-, student conferences, grading papers, etc., etc.