UNITED STEELWORKERS OF AMERICA *v.*
AMERICAN MANUFACTURING CO.

No. 360. Argued April 27, 1960.—Decided June 20, 1960.

*David E. Feller* argued the cause for petitioner. With
him on the brief were *Arthur J. Goldberg, Elliot Bredhoff,
James P. Clowes* and *Carney M. Layne.*

*John S. Carriger* argued the cause for respondent. With
him on the brief were *John S. Fletcher* and *Harold M.
Humphreys.*

Opinion of the Court by MR. JUSTICE DOUGLAS,
announced by MR. JUSTICE BRENNAN.

This suit was brought by petitioner union in the District Court to compel arbitration of a "grievance" that
petitioner, acting for one Sparks, a union member, had
filed with the respondent, Sparks' employer. The employer defended on the ground (1) that Sparks is estopped
from making his claim because he had a few days previously settled a workmen's compensation claim against
the company on the basis that he was permanently partially disabled, (2) that Sparks is not physically able to

do the work, and (3) that this type of dispute is not arbitrable under the collective bargaining agreement in question.

The agreement provided that during its term there would be "no strike," unless the employer refused to abide by a decision of the arbitrator. The agreement sets out a detailed grievance procedure with a provision for arbitration (regarded as the standard form) of all disputes between the parties "as to the meaning, interpretation and application of the provisions of this agreement." [1]

The agreement reserves to the management power to suspend or discharge any employee "for cause." [2]  It also contains a provision that the employer will employ and promote employees on the principle of seniority

---

[1] The relevant arbitration provisions read as follows:

"Any disputes, misunderstandings, differences or grievances arising between the parties as to the meaning, interpretation and application of the provisions of this agreement, which are not adjusted as herein provided, may be submitted to the Board of Arbitration for decision. . . .

"The arbitrator may interpret this agreement and apply it to the particular case under consideration but shall, however, have no authority to add to, subtract from, or modify the terms of the agreement. Disputes relating to discharges or such matters as might involve a loss of pay for employees may carry an award of back pay in whole or in part as may be determined by the Board of Arbitration.

"The decision of the Board of Arbitration shall be final and conclusively binding upon both parties, and the parties agree to observe and abide by same. . . ."

[2] "The Management of the works, the direction of the working force, plant layout and routine of work, including the right to hire, suspend, transfer, discharge or otherwise discipline any employee for cause, such cause being: infraction of company rules, inefficiency, insubordination, contagious disease harmful to others, and any other ground or reason that would tend to reduce or impair the efficiency of plant operation; and to lay off employees because of lack of work, is reserved to the Company, provided it does not conflict with this agreement. . . ."

"where ability and efficiency are equal." [3]   Sparks left his work due to an injury and while off work brought an action for compensation benefits.   The case was settled, Sparks' physician expressing the opinion that the injury had made him 25% "permanently partially disabled." That was on September 9.   Two weeks later the union filed a grievance which charged that Sparks was entitled to return to his job by virtue of the seniority provision of the collective bargaining agreement.   Respondent refused to arbitrate and this action was brought.   The District Court held that Sparks, having accepted the settlement on the basis of permanent partial disability, was estopped to claim any seniority or employment rights and granted the motion for summary judgment.   The Court of Appeals affirmed, 264 F. 2d 624, for different reasons. After reviewing the evidence it held that the grievance is "a frivolous, patently baseless one, not subject to arbitration under the collective bargaining agreement."   *Id.*, at 628.   The case is here on a writ of certiorari, 361 U. S. 881.

Section 203 (d) of the Labor Management Relations Act, 1947, 61 Stat. 154, 29 U. S. C. § 173 (d), states, "Final adjustment by a method agreed upon by the parties is hereby declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement. . . ."   That policy can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play.

A state decision that held to the contrary announced a principle that could only have a crippling effect on griev-

---

[3] This provision provides in relevant part:

"The Company and the Union fully recognize the principle of seniority as a factor in the selection of employees for promotion, transfer, lay-off, re-employment, and filling of vacancies, where ability and efficiency are equal.   It is the policy of the Company to promote employees on that basis."

ance arbitration. The case was *International Assn. of Machinists* v. *Cutler-Hammer, Inc.*, 271 App. Div. 917, 67 N. Y. S. 2d 317, aff'd 297 N. Y. 519, 74 N. E. 2d 464. It held that "If the meaning of the provision of the contract sought to be arbitrated is beyond dispute, there cannot be anything to arbitrate and the contract cannot be said to provide for arbitration." 271 App. Div., at 918, 67 N. Y. S. 2d, at 318. The lower courts in the instant case had a like preoccupation with ordinary contract law. The collective agreement requires arbitration of claims that courts might be unwilling to entertain. In the context of the plant or industry the grievance may assume proportions of which judges are ignorant. Yet, the agreement is to submit all grievances to arbitration, not merely those that a court may deem to be meritorious. There is no exception in the "no strike" clause and none therefore should be read into the grievance clause, since one is the *quid pro quo* for the other.[4] The question is not whether in the mind of the court there is equity in the claim. Arbitration is a stabilizing influence only as it serves as a vehicle for handling any and all disputes that arise under the agreement.

The collective agreement calls for the submission of grievances in the categories which it describes, irrespective of whether a court may deem them to be meritorious. In our role of developing a meaningful body of law to govern the interpretation and enforcement of collective bargaining agreements, we think special heed should be given to the context in which collective bargaining agreements are negotiated and the purpose which they are intended to serve. See *Lewis* v. *Benedict Coal Corp.*, 361 U. S. 459, 468. The function of the court is very limited when the parties have agreed to submit all

---

[4] Cf. *Structural Steel & Ornamental Iron Assn.* v. *Shopmens Local Union,* 172 F. Supp. 354, where the employer sued for breach of the "no strike" agreement.

questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for.

The courts, therefore, have no business weighing the merits of the grievance,[5] considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious. The processing of even frivolous claims may have therapeutic values of which those who are not a part of the plant environment may be quite unaware.[6]

---

[5] See *New Bedford Defense Products Division* v. *Local No. 1113*, 258 F. 2d 522, 526 (C. A. 1st Cir.).

[6] Cox, Current Problems in the Law of Grievance Arbitration, 30 Rocky Mt. L. Rev. 247, 261 (1958), writes:

"The typical arbitration clause is written in words which cover, without limitation, all disputes concerning the interpretation or application of a collective bargaining agreement. Its words do not restrict its scope to meritorious disputes or two-sided disputes, still less are they limited to disputes which a judge will consider two-sided. Frivolous cases are often taken, and are expected to be taken, to arbitration. What one man considers frivolous another may find meritorious, and it is common knowledge in industrial relations circles that grievance arbitration often serves as a safety valve for troublesome complaints. Under these circumstances it seems proper to read the typical arbitration clause as a promise to arbitrate every claim, meritorious or frivolous, which the complainant bases upon the contract. The objection that equity will not order a party to do a useless act is outweighed by the cathartic value of arbitrating even a frivolous grievance and by the dangers of excessive judicial intervention."

The union claimed in this case that the company had violated a specific provision of the contract. The company took the position that it had not violated that clause. There was, therefore, a dispute between the parties as to "the meaning, interpretation and application" of the collective bargaining agreement. Arbitration should have been ordered. When the judiciary undertakes to determine the merits of a grievance under the guise of interpreting the grievance procedure of collective bargaining agreements, it usurps a function which under that regime is entrusted to the arbitration tribunal.

*Reversed.*

MR. JUSTICE FRANKFURTER concurs in the result.

MR. JUSTICE WHITTAKER, believing that the District Court lacked jurisdiction to determine the merits of the claim which the parties had validly agreed to submit to the exclusive jurisdiction of a Board of Arbitrators (*Textile Workers* v. *Lincoln Mills,* 353 U. S. 448), concurs in the result of this opinion.

MR. JUSTICE BLACK took no part in the consideration or decision of this case.

MR. JUSTICE BRENNAN, with whom MR. JUSTICE HARLAN joins, concurring.*

While I join the Court's opinions in Nos. 443, 360 and 538, I add a word in Nos. 443 and 360.

In each of these two cases the issue concerns the enforcement of but one promise—the promise to arbitrate in the context of an agreement dealing with a particular subject

---

*[This opinion applies also to No. 443, *United Steelworkers of America* v. *Warrior & Gulf Navigation Co., post,* p. 574, and No. 538, *United Steelworkers of America* v. *Enterprise Wheel & Car Corp., post,* p. 593.]

matter, the industrial relations between employers and employees. Other promises contained in the collective bargaining agreements are beside the point unless, by the very terms of the arbitration promise, they are made relevant to its interpretation. And I emphasize this, for the arbitration promise is itself a contract. The parties are free to make that promise as broad or as narrow as they wish, for there is no compulsion in law requiring them to include any such promises in their agreement. The meaning of the arbitration promise is not to be found simply by reference to the dictionary definitions of the words the parties use, or by reference to the interpretation of commercial arbitration clauses. Words in a collective bargaining agreement, rightly viewed by the Court to be the charter instrument of a system of industrial self-government, like words in a statute, are to be understood only by reference to the background which gave rise to their inclusion. The Court therefore avoids the prescription of inflexible rules for the enforcement of arbitration promises. Guidance is given by identifying the various considerations which a court should take into account when construing a particular clause—considerations of the milieu in which the clause is negotiated and of the national labor policy. It is particularly underscored that the arbitral process in collective bargaining presupposes that the parties wanted the informed judgment of an arbitrator, precisely for the reason that judges cannot provide it. Therefore, a court asked to enforce a promise to arbitrate should ordinarily refrain from involving itself in the interpretation of the substantive provisions of the contract.

To be sure, since arbitration is a creature of contract, a court must always inquire, when a party seeks to invoke its aid to force a reluctant party to the arbitration table, whether the parties have agreed to arbitrate the particu-

lar dispute. In this sense, the question of whether a dispute is "arbitrable" is inescapably for the court.

On examining the arbitration clause, the court may conclude that it commits to arbitration any "dispute, difference, disagreement, or controversy of any nature or character." With that finding the court will have exhausted its function, except to order the reluctant party to arbitration. Similarly, although the arbitrator may be empowered only to interpret and apply the contract, the parties may have provided that any dispute as to whether a particular claim is within the arbitration clause is itself for the arbitrator. Again the court, without more, must send any dispute to the arbitrator, for the parties have agreed that the construction of the arbitration promise itself is for the arbitrator, and the reluctant party has breached his promise by refusing to submit the dispute to arbitration.

In *American,* the Court deals with a request to enforce the "standard" form of arbitration clause, one that provides for the arbitration of "[a]ny disputes, misunderstandings, differences or grievances arising between the parties as to the meaning, interpretation and application of this agreement . . . ." Since the arbitration clause itself is part of the agreement, it might be argued that a dispute as to the meaning of that clause is for the arbitrator. But the Court rejects this position, saying that the threshold question, the meaning of the arbitration clause itself, is for the judge unless the parties clearly state to the contrary. However, the Court finds that the meaning of that "standard" clause is simply that the parties have agreed to arbitrate any dispute which the moving party asserts to involve construction of the substantive provisions of the contract, because such a dispute necessarily does involve such a construction.

The issue in the *Warrior* case is essentially no different from that in *American,* that is, it is whether the company

agreed to arbitrate a particular grievance. In contrast to *American,* however, the arbitration promise here excludes a particular area from arbitration—"matters which are strictly a function of management." Because the arbitration promise is different, the scope of the court's inquiry may be broader. Here, a court may be required to examine the substantive provisions of the contract to ascertain whether the parties have provided that contracting out shall be a "function of management." If a court may delve into the merits to the extent of inquiring whether the parties have expressly agreed whether or not contracting out was a "function of management," why was it error for the lower court here to evaluate the evidence of bargaining history for the same purpose? Neat logical distinctions do not provide the answer. The Court rightly concludes that appropriate regard for the national labor policy and the special factors relevant to the labor arbitral process, admonish that judicial inquiry into the merits of this grievance should be limited to the search for an explicit provision which brings the grievance under the cover of the exclusion clause since "the exclusion clause is vague and arbitration clause quite broad." The hazard of going further into the merits is amply demonstrated by what the courts below did. On the basis of inconclusive evidence, those courts found that *Warrior* was in no way limited by any implied covenants of good faith and fair dealing from contracting out as it pleased—which would necessarily mean that *Warrior* was free completely to destroy the collective bargaining agreement by contracting out all the work.

The very ambiguity of the *Warrior* exclusion clause suggests that the parties were generally more concerned with having an arbitrator render decisions as to the meaning of the contract than they were in restricting the arbitrator's jurisdiction. The case might of course be otherwise were the arbitration clause very narrow, or the

exclusion clause quite specific, for the inference might then be permissible that the parties had manifested a greater interest in confining the arbitrator; the presumption of arbitrability would then not have the same force and the Court would be somewhat freer to examine into the merits.

The Court makes reference to an arbitration clause being the *quid pro quo* for a no-strike clause. I do not understand the Court to mean that the application of the principles announced today depends upon the presence of a no-strike clause in the agreement.

MR. JUSTICE FRANKFURTER joins these observations.