Isaac HOWARD, Plaintiff

v.

UNITED STATES RUBBER CO., Inc., Defendant.

Civ. A. No. 59–572–C.

United States District Court
D. Massachusetts.

Feb. 10, 1961.

J. Arthur Hickerson, Springfield, Mass., for plaintiff.

John E. Flanagan, Springfield, Mass., for defendant.

CAFFREY, District Judge.

This action, in the nature of a bill in equity, was filed in the Superior Court of Hampden County by plaintiff, a resident of the Commonwealth of Massachusetts. Thereafter it was removed to this court by the defendant, a corporation organized under the laws of the State of New Jersey.

Plaintiff was an employee of defendant at its Fisk Rubber Co. plant located in Chicopee Falls, Massachusetts, and had been an employee of defendant for approximately 13 years prior to June 20, 1958. During the time of such employment, plaintiff was a member of Local Union No. 11, United Rubber, Cork, Linoleum and Plastic Workers of America. On June 20, 1958, plaintiff received a telegraphic notice from defendant that plaintiff was discharged from his employment at the Fisk Rubber Company. The telegram stated:

"Isaac Howard 142 Bay Street Springfield Mass.

This Is To Advise You That Effective June 20th 1958 Your Employment Is Terminated For Violation Of Article IV Paragraph C Of The Company Wide Agreement.
Very Truly Yours United States Rubber Company, W F Cunningham."

I find that prior to the discharge of the plaintiff by the defendant, a contract was entered into between the United States Rubber Co., Inc. (Chicopee Falls plant) and Local Union No. 11, United Rubber, Cork, Linoleum and Plastic Workers of America. This contract, referred to as the "company-wide agreement," became effective June 18, 1957.

The full text of this contract is appended to plaintiff's bill of complaint as Exhibit A thereto. Clause IV, paragraph C, referred to in the telegram, provides:

"The Local Unions agree that they will not encourage, sanction, or approve any strike, stoppage, slowdown, or other interruption of work growing out of any dispute which is subject to the grievance procedure under the terms of this agreement and the supplements thereto. * * Any strike, stoppage, slowdown, or other interruption of work in violation of this agreement or the supplements thereto may result in discipline by the Company. * * * "

Article V. *Grievance Procedure*, provides:

"A. The parties agree that all grievances which arise should be settled as promptly as possible. * * *

"B. Any employee may contact his foreman or supervisor directly, but those employees desiring to process their grievances through the Union shall do so in accordance with the following procedure: * * *

* * * * * *

"Fourth Step: In the event a grievance arising under the terms of this agreement * * * is not settled at any one of the steps outlined above, either party to the agreement shall notify the other party and the Impartial Umpire in writing that it wishes to refer the case to arbitration * * *. The decision of the Impartial Umpire shall be final and binding on both parties."

Thereafter, the Local Union, acting for and at the request of plaintiff, asked that this matter go to an impartial umpire who, after a hearing at which plaintiff appeared and testified, upheld the validity of the company's action in discharging plaintiff.

At the opening of the trial, counsel for the parties stipulated that the decision of the impartial umpire which is appended to plaintiff's bill of complaint might be considered a part of the record and evidence in this case. This decision was, in substance, that plaintiff had engaged in an unlawful walkout on June 17, 1958, and that by reason thereof his claim of a grievance was denied.

At the close of direct examination of plaintiff by his counsel, defendant filed a motion for a directed verdict, on which motion decision was reserved.

■■ The Supreme Court of the United States, in a series of three decisions handed down on June 20, 1960 (United Steelworkers of America v. American Mfg. Co., 363 U.S. 561, 80 S.Ct. 1343, 4 L.Ed.2d 1403; United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; and United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424), has made it abundantly clear that the national policy is to highly favor the resolution of labor disputes by utilization of the arbitration process, and the Court likewise has left no doubt that a court should not review *de novo* the decision of an arbitrator under a collective bargaining agreement.

In United Steelworkers v. American Mfg. Co., supra, the Court said, 363 U.S. at page 567, 80 S.Ct. at page 1346:

"The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator * * *.

"The courts therefore have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit

all grievances to arbitration, not merely those the court will deem meritorious * * *."

In the instant case it is clear that the collective bargaining agreement, which is controlling on the rights of the parties, provided for the determination of all grievances by arbitration and, also, provided that the decision of the arbitrator was to be final. The plaintiff, on his own testimony, assented to submitting his grievance to the impartial umpire. I find and rule that the decision of the umpire is final and binding upon the parties and may not be re-tried by this Court.

Complaint dismissed, without costs.