**UNITED ELECTRICAL, RADIO AND MACHINE WORKERS OF AMERICA (UE), Plaintiff,**

**v.**

**STAR EXPANSION INDUSTRIES, INC., Local No. 1968 International Brotherhood of Electrical Workers, and Thomas A. Knowlton, Defendants.**

United States District Court
S. D. New York.

April 13, 1964.

Frank J. Donner and Robert Z. Lewis, New York City, for plaintiff.

Drechsler & Leff, New York City, for defendant Star Expansion.

PALMIERI, District Judge.

This motion for threshold injunctive relief poses an interesting and an apparently novel question: whether a union, newly certified as the exclusive bargaining agent of a group of employees previously represented by another union, can displace that union as the employee representative in an arbitration proceeding already in train and commenced under a collective bargaining agreement with the prior union.

The claim of the new union for support of its position rests largely on the broad contention that the first union, having been repudiated as a result of a majority vote in a representation election, can no longer, with any degree of propriety, retain representational rights among the employees; that only the newly certified union can properly process their grievances; and that any con-

trary result would contravene the wishes of the employees as expressed by the election, create confusion, and otherwise derogate from the federal policy of promoting industrial peace. The argument is alluring but I am constrained to reject it. I turn now to a statement of the facts, which are undisputed, and to the reasons which compel me to deny preliminary injunctive relief.

On December 5, 1963, Albert E. Dinges, an employee of Star Expansion Industries, Inc., (Star), was discharged from his job. Dinges was a member of the bargaining unit covered by a collective bargaining agreement entered into by Star Expansion Industries, Inc. and Local #1968, International Brotherhood of Electrical Workers (IBEW) on March 11, 1961. IBEW filed a grievance on Dinges' behalf against Star. When the grievance procedures prescribed by the collective bargaining agreement failed to resolve the grievance, recourse was had to the New York State Board of Mediation, which, on January 17, 1964, appointed Thomas A. Knowlton to arbitrate the grievance. An arbitration hearing was scheduled by Knowlton for February 10, 1964. On February 7, 1964, Dinges requested a postponement of the hearing, which was granted. A subsequent postponement deferred the hearing to March 23, 1964.

On March 11, 1964, the collective bargaining agreement between IBEW and Star expired. On March 12, as the result of an election, the validity of which is not here contested, United Electrical, Radio and Machine Workers of America (UE) was certified as the collective bargaining representative of the employees of Star formerly represented by IBEW, among whom was Dinges. As a result of its certification, UE sought to intervene in the arbitration proceedings, and to represent Dinges. At the March 23rd hearing, UE appeared and presented to the arbitrator, Knowlton, its contention that it was the only union which was a proper party to the arbitration. After a full hearing on this issue, the arbitrator ruled that IBEW was the proper union to process the grievance.

The question to be answered, then, is whether a union which had started processing the arbitration of a grievance arising under its collective bargaining contract with the employer retains the right, after the expiration of the contract and notwithstanding subsequent decertification, to continue the processing of that arbitration to conclusion, or whether it must yield to the claim of the newly certified union.

■ The duty to arbitrate is of contractual origin. John Wiley & Sons v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898, decided March 30, 1964; United Steelworkers of America v. Warrior and Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). And see United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); Carey v. General Electric Company, 315 F.2d 499 (2d Cir. 1963).

Since an employer has no obligation to arbitrate in the absence of a contractual obligation to do so, the correlative rights of the parties must perforce rest upon their agreement. In this case UE has no agreement. It is newly certified as exclusive bargaining representative—a status implying future responsibilities and looking to the formulation of a new contractual relationship which may or may not include arbitration provisions like those in the IBEW contract. No legal theory is suggested which can permit it to assert rights under a contract to which it is a complete stranger.[1]

---

1. The National Labor Relations Board has held that where during the life of a contract a new union is certified it is not bound by the contract. The Second Circuit has noted such a holding without disapproval. Local 1545, United Bro. of Carpenters, etc. v. Vincent, 286 F.2d 127, footnote 5, at 131 (1960).

■ Apart from what has just been said, however, a consideration of the pertinent equities leads me to the conclusion that a preliminary injunction should be denied. The arbitrator has here passed on the question of union representation, the very question presented by this motion, and has decided it adversely to UE, the moving party before this Court. In the course of the arbitration proceedings, the prior union offered to cooperate with UE, to call any witnesses it wished, and to submit any memoranda it wished to the arbitrator. These offers were rejected by UE. To thrust upon the courts, as UE wishes, a matter already decided by the arbitrator would be productive of delay and confusion and impair the federal policy in favor of arbitration. See Section 10 of the United States Arbitration Act, 9 U.S.C. § 10, and The New York Arbitration Law, New York C.P.L.R. § 7511. Both statutes strongly repel the notion of judicial review of arbitral decisions except in unusual cases, like fraud, corruption, etc.

An arbitrator's decision in the case of Trumbull Asphalt Co., 38 Labor Arbitration Reports 1093 (1962), would seem to furnish sound and logical guidelines for this Court's decision. In that case, a union was held to be entitled to represent employees in arbitration of a grievance where the grievance arose and the arbitrator was appointed prior to a decertification election. In words particularly appropriate to the instant case, the arbitrator said:

> [T]he union was the designated collective representative when the grievance arose, * * * the rights involved arose out of an existing collective agreement, are vested, and the union may therefore lawfully vindicate these rights. In addition to legal considerations, allowing the union to perform this function has much to be said for it from both a practical as well as an equitable basis. The union negotiated the agreement and its provisions would be familiar terrain. Its knowledge of the provisions, their history and intent, would be superior to that of a successor union, or to that of the individual employees. Its experience with the grievance machinery, and its knowledge of the attitude and approach of company personnel would give it an important advantage over a successor union or individual employees. Moreover, the damage by loss of momentum or complete denial of rights because of time or other procedural requirements is obviated. (38 L.A. at 1098).

See also In re Busch Jewelry Co., 19 Labor Arbitration Reports 365 (1952).

■ These are persuasive considerations. A major purpose of arbitration is the promotion and maintenance of industrial peace and stabilization. United Steelworkers of America v. Warrior and Gulf Navigation Co., 363 U.S. at 578, 80 S.Ct. at 1350, 4 L.Ed.2d 1409 (1960). This purpose can be better served by permitting the instant arbitration to proceed untrammeled to conclusion.

■ Furthermore, since the grievance being arbitrated involves the validity of a discharge, and since the arbitrator has expressed his intention to make his award in a very short time, the parties are better served by a denial of the motion. In the discharge issue before the arbitrator, there is involved a claim for back pay which now already covers a period of over four months. This liability continues to accrue to the prejudice of Star until a decision is rendered. If the employee is reinstated, the back pay issue is resolved. Moreover, the employee is better served by an opportunity to work than by the idleness and inconvenience incident to prolonged litigation. If, on the other hand, the employee is held by the arbitrator to have been discharged for just cause and this litigation should ultimately result in setting aside such an award, the employee would be in substantially the same position as if the temporary injunction had been issued.

The motion for a temporary injunction to restrain Star and IBEW from proceeding further with the arbitration of the Dinges grievance, and to restrain the arbitrator from handing down a decision, is denied. The issues relating to the grievances of the employees Slaughter, Kessel and Hay, who are also mentioned in the complaint, were neither briefed nor referred to on the argument. It appears that these grievances have not yet been submitted to arbitration. They must be deemed to have been omitted from the scope of the relief requested in this motion.

It is so ordered.