**PHILADELPHIA MARINE TRADE ASSOCIATION**

v.

**INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL–CIO**

and

**Local 1291, International Longshoremen's Association.**

**Civ. A. No. 42228.**

United States District Court
E. D. Pennsylvania.

March 14, 1967.

Abraham E. Freedman (of Freedman, Borowsky & Lorry), Philadelphia, Pa., for defendant.

Francis A. Scanlan (of Kelly, Deasey & Scanlan), Philadelphia, Pa., for plaintiff.

## OPINION

DAVIS, District Judge.

The plaintiff, Philadelphia Marine Trade Association, has brought this ac-

tion to require the defendant union to submit to arbitration pursuant to paragraphs 13(a) 13(c), and 28 of their labor contract a dispute concerning the right of the Association to compel the longshoremen to unload two pallets of frozen meat in each draft rather than one pallet. The defendant contends that the issue is one for negotiation and not arbitration pursuant to paragraph 13(d) of the contract.

We have held a hearing and now make the following:

## FINDINGS OF FACT

1. On February 28, 1967, a dispute arose between the parties concerning the number of pallets of frozen meat to be discharged in each draft from the S/S CAPORTEGAL.

2. The representatives of the union instructed the longshoremen not to unload the cargo with more than one pallet per draft.

3. The plaintiff attempted to have the union agree to arbitrate the dispute under the contract but the defendant refused on the ground that the matter was not one for arbitration.

4. The pertinent portions of paragraph 13 of the labor contract read:

"The employer to have the right to so regulate the work of stevedoring a ship as to:

(a) Best attain an orderly, safe and efficient movement of the cargo into or out of the vessel.

(c) Making the best use of the skill and aptitude of the workers with the right to apply available mechanism and motive power to minimize wasteful manual work.

(d) Nothing herein contained shall be construed as warranting a demand on the part of the union to change established methods of operation or to change the number of men heretofore employed in gangs, providing that a committee of three representatives of the Union and three representatives of the Employer shall immediately following the execution of this agreement hold meetings for the purpose of reaching an agreement upon the number of men on certain commodities where disputes regarding the number of men may exist. In the event that technological advancements in machinery or methods in the future are introduced by the Employers, the number of men thereforth to be employed for handling the particular commodities shall be the subject of negotiation between the subcommittee herein created. This clause shall not be subject to the grievance and arbitration Clause No. 28."

5. The pertinent portion of paragraph 28 of the labor contract reads:

"GRIEVANCE PROCEDURE: All disputes and grievances of any kind or nature whatsoever arising under the terms and conditions of this agreement and all questions involving the interpretation of this agreement other than any disputes or grievances arising under the terms and conditions of paragraph 13(d) hereof, shall be referred to a Grievance Committee, which shall consist of two members selected by the Employers and two members selected by the Union."

6. While the defendant has on occasion unloaded two pallets of cargo to a draft as early as 1963, the use of this method has been very sporadic and not on a regular basis.

7. Even when the two pallet method was employed it was not the exclusive method used on any ship, for one pallet loads were utilized also.

8. The union and its officials were not aware of the occasional unloading of two pallets to a draft until the incident on the S/S CAPORTEGAL on February 28, 1967.

9. Since World War II when pallets were first employed by stevedores, the established practice for unloading frozen meat and other cargo on the Philadelphia waterfront has been through the use of one pallet drafts.

10. It has not been an established practice on the Philadelphia waterfront

to unload frozen meat or other cargo through the use of two pallet drafts.

## CONCLUSIONS OF LAW.

1. The Court has jurisdiction over the parties and subject matter. See 29 U.S.C. § 185.

2. The Court has power to compel a union to submit an issue to arbitration if under the labor contract it is a matter subject to arbitration.

3. It is for the Court to determine whether the dispute is subject to arbitration under the contract.

4. The use of two pallet drafts is a change in the established method of operation, and the dispute therefore comes within paragraph 13(d) of the labor contract.

5. The dispute in question is not subject to arbitration but rather to negotiation.

## DISCUSSION

It is clear that this Court has the power to compel a union to arbitrate a dispute or grievance if the court determines that it is a matter for arbitration under the labor contract. 29 U.S.C. § 185; John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909 (1964); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). Since Congressional policy favors the settling of labor disputes through arbitration, the Supreme Court has stated, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." United Steelworkers of American v. Warrior & Gulf Navigation Co., supra, 363 U.S. at 582–583, 80 S.Ct. at 1353.

We can say with positive assurance in this case that the dispute in question is not covered by arbitration. We have a situation where literally thousands of ships have loaded and discharged cargo in the port of Philadelphia since World War II when pallets were first used. Even assuming the veracity of plaintiff's evidence, the plaintiff could only name several dozen incidents at most when two pallet drafts were employed, and even then its witnesses could recite only a few ships on which this method was employed. The plaintiff never produced its records which could have shown the number of times this method was used and the names of the ships on which it was employed. We can only conclude that the failure to produce this best evidence indicates that the use of two pallet drafts was not at all extensive. Moreover, the few times that the two pallet method was used, it was done without the knowledge of the union or its officials. These officials spend a great deal of time on the waterfront observing the loading and discharging of cargo, and they never once observed the two pallet method until February 28, 1967. The sporadic and clandestine use of two pallets to a draft is certainly not an established method of operation under the labor contract, and the plaintiff's attempt to employ this system is a change in the established method. This dispute is one for negotiation between the parties under paragraph 13(d) of their collective bargaining agreement.

## ORDER

And now, this 14th day of March 1967, it is hereby ordered that the plaintiff's motion to compel the defendant to submit the dispute in issue to arbitration be and the same is denied.