UNITED MINE WORKERS OF AMERICA DISTRICT NO. 2, and United Mine Workers of America Local No. 1412, Plaintiffs,

v.

ROCHESTER & PITTSBURGH COAL COMPANY, Defendant.

Civ. A. No. 76–006.

United States District Court,
W. D. Pennsylvania.

July 20, 1976.

---

Kuhn, Engle, Blair & Stein, Pittsburgh, Pa., for plaintiffs.

Rose, Schmidt & Dixon, Pittsburgh, Pa., for defendant.

## OPINION

WEBER, District Judge.

### FINDINGS

This is a suit brought under § 301(a) of the Labor Management Relations Act, 29 U.S.C. 185(a). Plaintiffs are labor organizations representing employees of defendant employed in its mines. Defendant is a mining company which employs about 700 members of plaintiff Unions and about 100 supervisory personnel who are not members of the Union. The parties are bound by collective bargaining agreements known as the National Bituminous Coal Wage Agreement of 1971 and a successor Agreement of 1974.

The Agreements provide that all work in and around the mines related to the production of coal, its processing and transportation, and repair and maintenance work is the exclusive work and jurisdiction of the union members. This provision is specifically detailed in both agreements in substantially the same terms, that of the 1974 Agreement reading:

Art. II, Section C.

Section (c) Supervisors Shall not Perform Classified Work.

*Supervisory employees shall perform no classified work covered by this Agreement* except if such work is necessary for the purpose of training or instructing classified Employees. When a dispute arises under this section, it shall be adjudicated through the grievances machinery and in such proceedings the following rule will apply: the burden is on the Employer to prove that classified work has not been performed by supervisory personnel.

The Agreements also contain a grievance-arbitration procedure, Art. XXIII, Sec. (c) of the 1974 Agreement, providing for stages of grievance consideration and terminating in final and binding arbitration.

During the terms of the 1971 and 1974 agreements, which became effective November 12, 1971, 24 grievances were filed by the Union based on this clause, beginning August 28, 1974 and continuing up to and including the time of trial. One of these was dismissed by the Arbitrator, nine proceeded to hearing and award by the arbitrator, and fourteen were settled by the parties prior to the arbitration stage. Of the nine cases proceeding to award by the arbitrator, the awards ranged from 15 minutes pay to one employee (Exhibit 17) through one-half shift pay to two men, to one full shift's pay. In many cases the arbitrator's award was the same as or less than the company's offer at prior stages of the grievance.

The defendant company does not deny that a supervisor performed the classified work in each instance. It advances the fact that eleven of the grievances involved work done by supervisors during illegal work stoppages, and one involved work done during a memorial period called by the Union. In these twelve cases the classified work done by the supervisors was scheduled idle day work, non-production, but necessary maintenance work which was required to be done before production could be resumed. The question of whether such work could be done by supervisors under these circumstances was never presented to or ruled upon by the Arbitrator.

Of the supervisory personnel of defendant's mines forty (40%) percent of Jane Mine have less than three years supervisory experience, and fifty (50%) percent of those at Emily Mine have less than two years supervisory experience. Almost all of the supervisory personnel came up through the ranks, and were hourly paid employees and union members before the promotion. They customarily carry their own tools with them for the possibility of being called upon to do emergency or instructional work, which is permitted supervisors under the contract.

In the trial of this case the court was presented with evidence showing the factual situation out of which each grievance arose. With respect to those arising at times other than the twelve mentioned where no union members were working in the mine, our conclusion is that in a large measure they represent short-term, temporary, and minor breaches of the clause in question. For example, in some instances the supervisor had been asked to perform the work by a classified employee, or worked alongside a classified employee, or undertook a temporary repair prior to the arrival of the mechanic. The periods of time involved were extremely short in all cases and do not prove a consistent policy of supervisory personnel to replace classified union personnel for extended periods of time. The Arbitrator at one point described these infractions as "insubstantial". (Plaintiffs' Exhibit 16, pp. 9–11).

The evidence also revealed some instances of conduct approaching a type of entrapment, where the classified union employee was being assisted by the supervisor without making a complaint at the time, but later filing a grievance.

The evidence also shows that in all cases defendant mining company never refused to process a grievance, settled most of them by agreement at an early stage, and paid any settlement or award promptly.

It also appears that defendant mine company has taken substantial affirmative action to reduce, if not entirely eliminate instances of supervisors performing classified work, although the court believes that such instances can never be completely eliminated because of the difficulty of establishing in each instance what constitutes the excepted categories of "emergencies" and "training and instruction".

The effectiveness of the defendants' corrective action is evidenced by a reduction of the number of grievances on this subject filed by the Union since January 1975. The last four grievances introduced into the evidence by plaintiff are all subsequent to the date of filing the within complaint and subject to the inference that they were motivated by the pending litigation.

While the Arbitrator was specifically requested by the Union to issue a cease and

desist order and to award punitive damages, he denied this request because he found that the Agreement did not provide him with authority to issue a cease and desist order. The Arbitrator also ruled that he was limited by the Agreement in imposing any penalty other than requiring the employer to compensate the proper contract worker for the time during which work was done by supervisory personnel. No appeal was filed from this decision of the Arbitrator to the Arbitration Review Board under the provisions of the 1972 Agreement.

■ Because the affected employees have been compensated for the lost work opportunities, the only evidence of substantial and irreparable injury in this record is the item of expense to the Union of carrying a case to arbitration. This is admittedly substantial in comparison to the awards granted, but we cannot find this a substantial and irreparable injury because it is the procedure for which the parties have bargained and to which they agreed. The Arbitrator, in construing the Agreement, found that the topic of penalty provisions for violation of Article II, Sec. (c) had been proposed during bargaining negotiations, but these were not incorporated into the final agreement and the Arbitrator concluded that he was limited by the Agreement to an award compensating for lost work time. In a sense this is punitive because the employer must face this double expense of additional payment for work done. In all events, a majority of these grievances were settled before arbitration and we cannot find the expense of arbitration to be the substantial and irreparable loss required to sustain an injunction.

There is no evidence in this case that the employer was or is attempting to avoid its contractual duty to consider grievances and arbitrate. In those circumstances we believe that the court has no further authority to involve itself in the grievance procedure.

## DISCUSSION

Plaintiff Unions seek a mandatory injunction to compel defendant employer to perform its contractual obligation to prevent its supervisory personnel from performing classified production work which is within the exclusive jurisdiction of the members of plaintiff Unions.

It appears to this court that as a matter of procedure this would result in every grievance over this issue, even at the first stage of the grievance procedure, coming before the court in the form of a petition for contempt citation. Since the effective date of the 1971 agreement, 24 grievances have been filed by the Union against the company over this clause. It has been suggested that more grievances on this subject might have been filed except for the reticence of employees to file against their immediate supervisors, or the minimal economic return. Aside from the question of whether this court could assess a greater contempt fine than that normally awarded by an arbitrator, the matter to be decided by the court would be exactly that which is placed before the arbitrator, and which the parties have agreed would be decided by an arbitrator.

■ It appears to the court that this contention subverts every principle of labor law fashioned by the courts following the *Steelworkers* trilogy, 363 U.S. 564, 574 and 593, 80 S.Ct. 1343, 4 L.Ed.2d 1403 [1960]. As recently as July 6, 1976, the Supreme Court has warned:

. . . but aside from the enforcement of the arbitration provisions of such contracts, within the limits permitted by *Boys Markets*, [*Boys Markets, Inc. v. Retail Clerks Union*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199] the Court has never indicated that the courts may enjoin actual or threatened contract violations despite the Norris-LaGuardia Act. *Buffalo Forge Co. v. U.S.W.A., AFL–CIO* (—— U.S. ——, 96 S.Ct. 3141 at 3148, 49 L.Ed.2d ——, 44th L.W. 5346 at p. 5350). The allegation of the complaint that the Union was breaching its obligation not to strike did not in itself warrant an injunction. —— U.S. ——, 96 S.Ct. at 3148, 44 L.W. 5350.

We recognize that the Court was specifically dealing with a case enjoining a strike,

78

and that the legislative prohibition of the Norris-LaGuardia Act applies only to judicial injunctions against strikes, but we still read these cases as part of the body of law mandated by the Supreme Court:

We conclude that the substantive law to apply in suits under § 301(a) is federal law, which the courts must fashion from the policy of our national labor laws. *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 456, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 [1957].

Returning to the Steelworkers trilogy, we note that in *United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 [1960], the Court stated:

The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator

\* \* \* \* \* \*

The courts, therefore, have no business weighing the merits of the grievance . . . The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious. The processing of even frivolous claims may have therapeutic values of which those who are not part of the plant environment may be quite unaware. (p. 568, 80 S.Ct. pp. 1346–1347)

To do what the plaintiff requests would be to submit to the court in each case of an application for contempt citation the questions of whether (1) the agreement had been breached because a supervisor did in fact perform classified work; (2) whether or not the classified work was performed by the supervisor under one of the exceptions provided for in the contract; (3) the amount of compensation due the grievant, and (4) what, if any, punitive relief should be awarded.

The body of labor law which has developed over the issues of arbitration of disputes clearly mandate that the district courts not become involved in these matters.

The federal policy of settling labor disputes by arbitration would be under-

mined if the courts had the final say in the merits of the awards. ese matters. prise Wheel & Car Corp. *363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 [1960].*

Returning to *Buffalo Forge*, supra, the court also noted:

The parties have agreed to grieve and arbitrate, not to litigate. They have not contracted for a judicial preview of the facts and the law . . . But the parties' agreement to adjust or to arbitrate their differences themselves would be eviscerated if the courts for all practical purposes were to try and decide contractual disputes at the preliminary injunction stage. —— U.S. at p. ——, 96 S.Ct. at p. 3149, 44 L.W. at p. 5351.

We, therefore, conclude that the matters raised by plaintiffs' complaint and the evidence produced at the hearing are exclusively within the grievance procedure established by the Agreement between the parties and that the court has no equitable powers to deal with them.

This opinion shall constitute the findings of fact and conclusions of law of the court in this matter tried before the court.

The plaintiffs' action for injunctive relief will be dismissed.