**UNITED PAPERWORKERS INTERNATIONAL UNION, AFL–CIO, CLC AND ITS LOCAL NO. 369, Appellant,**

v.

**GEORGIA PACIFIC CORPORATION; Crossett Paper Operations, Appellees.**

No. 87–1721.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 12, 1988.

Decided March 8, 1988.

Rehearing and Rehearing En Banc Denied May 2, 1988.

Chad Farris, Little Rock, Ark., for appellant.

John D. Davis, Pine Bluff, Ark., for appellees.

Before WOLLMAN, Circuit Judge, ROSS, Senior Circuit Judge, and BEAM, Circuit Judge.

BEAM, Circuit Judge.

The United Paperworkers International Union and its Local Number 369 (the Union) appeal from the district court's order granting summary judgment to the Georgia Pacific Corporation (GP or the Corporation) on the Union's claims against the Corporation. The Union had sought an order compelling the resubmission of three labor arbitration awards for clarification. The Union claims that the awards are incomplete and require amplification as to the proper remedy.

The district court found no ambiguity in the holdings which would require resubmission of the awards to the arbitrators. Thus, the action was dismissed. Because we believe that the district court was correct, we affirm.

I. FACTS

The events underlying this action began with a strike by the Union against the Corporation which commenced in July of 1985. During the work stoppage, three employees were alleged to have engaged in misconduct. As a result, they were dismissed. Two of the strikers, Johnny Upshaw and Clyde Watt, were discharged on August 5, 1985. The Corporation discharged striking employee Lonnie Cockrell on August 16, 1985.

The Union and the Corporation reached a strike settlement agreement on October 12,

1985. One section of the agreement provided for arbitration of the strike misconduct discharges. Immediately following that provision, the agreement spelled out a specific procedure whereby returning employees would be placed in available positions.

The specific procedure for recall of employees to work (the return to work clauses) was set forth as follows:

> The employees that return will be allowed to select jobs for which they are qualified in the following order:
>
> (1) Their job, if available.
>
> (2) Any other available job in their line of progression.
>
> (3) Any other available job in their department.
>
> (4) For those employees who do not have an available job in their department, the 25 most senior will be placed in a Preferential Placement Pool. Employees will be recalled from the Preferential Placement Pool to the extra board by plant seniority.

The procedure was needed because 150 permanent replacement employees had been hired during the strike. Available jobs were contractually defined as "those that the company determines that must be filled that are not filled by a permanent replacement."

On December 23, 1985, an arbitrator ordered that Upshaw "be returned to his job." On January 20, 1986, an arbitrator ordered that Watt "be returned to work." On March 13, 1986, an arbitrator ordered that Cockrell "be reinstated."

All three workers were subsequently returned to the work force in compliance with the above procedure. However, their former jobs were unavailable so they were assigned to positions different than those they held before the strike.

The Union disagreed with this approach and sought resubmission of the dispute to the arbitrators for clarification of the question of job assignment. The Corporation refused the request. The Union then filed suit in the district court to compel additional arbitration.

All three arbitrators were silent on the issue of specific job assignments upon a return to work by these previously discharged employees. From this, the district court concluded that this approach amounted to a determination by the arbitrators that the labor contract required the invocation of the "return to work" clauses on job assignment issues. We agree with the district court.

## II. THE ARBITRATORS' AWARDS

The district court determined that the arbitration awards were unambiguous. We agree with this assessment since GP had only to return these three individuals to the work force in order to comply with the orders issued by the arbitrators.

As stated in *United Paper Workers Int'l Union AFL–CIO v. MISCO, Inc.,* — U.S. —, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987):

> As long as the arbitrator's award "draws its essence from the collective bargaining agreement," and is not merely "his own brand of industrial justice," the award is legitimate. *Id.,* at 597, 80 S.Ct., at 1361 [*United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)].
>
> "The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for.
>
> "The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which

will support the claim." *Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 567–568, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960) ( * * * footnote omitted); see also *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649–650, 106 S.Ct. 1415, 1418–1419, 89 L.Ed.2d 648 (1986).

Obviously, the arbitrators' awards draw their essence from the strike settlement agreement. It is also obvious that each arbitrator concluded by way of contract interpretation, that job placement upon reinstatement to the work force should be controlled by the "return to work" clauses. Whether the Union, the trial court or this court has a different view is immaterial. The arbitrators' interpretation controls. Also, when confronted by a dispute such as this, the district court may consider what the award of the arbitrator said implicitly as well as explicitly. *See Resilient Floor, Etc. v. Welco Mfg. Co.*, 542 F.2d 1029, 1032 (8th Cir.1976).

In any event, if permitted by law to construe the agreement, we would find that GP makes a compelling interpretation of the settlement contract and a compelling argument for the propriety of the awards rendered. In fact, should the arbitrators have sought to designate specific job placement upon a return to work, a strong argument could have been made that such an award would have "failed to draw its essence from the [labor] agreement." *See United Paper Workers*, 108 S.Ct. at 370. It seems wholly inconsistent with the thrust of the strike settlement agreement to assume that workers who were discharged for alleged misconduct would be granted rights more favorable than those given to other workers not involved in purported bad acts. However, a court has no business weighing the merits of a particular grievance. *Harvill v. Roadway Exp., Inc.*, 640 F.2d 167, 169 (8th Cir.1981) (citing *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960)). And, this admonition extends to weighing the merits of implicit or explicit contract interpretation.

Accordingly, the order of the district court granting summary judgment to Georgia Pacific and dismissing this action is affirmed.