The **DELTA QUEEN STEAMBOAT COMPANY, Plaintiff–Appellee,**

v.

**DISTRICT 2 MARINE ENGINEERS BENEFICIAL ASSOCIATION, Associated Maritime Officers, AFL–CIO, and Philip Ritchie, Defendants–Appellants.**

No. 89–3084.

United States Court of Appeals, Fifth Circuit.

March 19, 1990.

Joel C. Glanstein, O'Donnell & Schwartz, New York City, Louis Robein, William Lurye, Gardner, Robein & Urann, Metairie, La., for defendants-appellants.

Daniel Lund, A. Gordon Grant, Jr., Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, La., for plaintiff-appellee.

---

*  District Judge of the Western District of Louisi-

ON SUGGESTION FOR REHEARING EN BANC

Before DAVIS and SMITH, Circuit Judges, and LITTLE,* District Judge.

PER CURIAM:

Treating the suggestion for rehearing en banc as a petition for panel rehearing, the petition for panel rehearing is DENIED.

The judges in regular active service of this court having been polled at the request of one of said judges, and a majority of said judges not having vote in favor of it (Federal Rules of Appellate Procedure and Local Rule 35), the suggestion for rehearing en banc is DENIED.

JERRE S. WILLIAMS, Circuit Judge, with whom POLITZ, KING, and JOHNSON, Circuit Judges, join, dissenting from the denial of rehearing en banc:

I must dissent from the failure of the Court to consider this case en banc to rectify the fundamental error of the panel opinion. *Delta Queen Steamboat Co. v. Dist. 2 Marine Engineers Beneficial Assn, AFL–CIO,* 889 F.2d 599 (5th Cir.1989). The panel opinion constitutes a significant and regrettable departure from the well-established law of this Circuit, and of the entire country, on deference to labor arbitration awards. The panel held that the arbitrator had no power under the collective contract to reinstate an employee discharged for what the arbitrator found to be "gross carelessness". I can only conclude that an intense disagreement with the arbitrator's reinstatement decision by the panel has led it to decide that the arbitrator departed from the contract in reaching that decision.

The last time a panel of this Court undertook to intrude itself deeply into the decision making process of the arbitrator, contrary to the well-established nation-wide law, our Court's decision was unanimously reversed by the United States Supreme

ana, sitting by designation.

Court. *United Paperworkers Intl Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). I had hoped that this Court had learned from that reversal, and I assumed that it had after our broad and effective opinion in *Dixie Machine Welding Metal Works, Inc. v. Intl Bro. of Boilermakers, Etc.*, 867 F.2d 250, 252 (5th Cir.1989), which recognized the sweep of the *Misco* decision.

In *Delta Queen*, Captain Ritchie, a 40 year veteran of the Merchant Marine, was discharged as pilot for causing a near-collision of his vessel, the MISSISSIPPI QUEEN, with some barges. His discharge by the company was submitted to the grievance and arbitration process. The arbitrator found that he had been "grossly careless". But he required reinstatement of Captain Ritchie on the ground that the discharge was discriminatory because there had been several other instances where pilots of this company had actually caused accidents, in one case resulting in damages of over a million dollars, and had nevertheless been reinstated. The discriminatory discharge, coupled with the fact that Ritchie had an outstanding record of 40 years, persuaded the arbitrator that he should be reinstated with seniority and some loss of back pay.[1]

The panel opinion found that the arbitrator was in error in altering the discipline awarded by the company because the contract denied him that power. This conclusion was manifestly in error.

The starting point for applying the contract in this case is a provision of the Management Rights clause, which reads: "The right to discipline and discharge for proper cause are likewise the sole responsibility of the company." If these words are interpreted literally, they mean that no grievance or arbitration process at all can be applicable in any discharge or discipline case. But this provision is in a Management Rights clause which by well-established understanding undertakes to state absolute rights of management which are then subjected to being pared down by subsequent contract provisions. It is as if this provision read: "The right to discipline and discharge for proper cause is the sole responsibility of the company, subject to the limitations later stated in this agreement."

The panel opinion properly recognized limitations upon this language because the later contract provisions concerning the grievance procedure and arbitration clearly withdraw discipline and discharge for proper cause from the sole responsibility of management. The panel concluded that the issue of "proper cause" was submitted to the grievance procedure and arbitration, but the issue of discipline was not. There are no contract words justifying this distinction. At best, the provision is ambiguous. The critical contract provision which establishes that the Management Rights clause cannot be literally interpreted as read, is a provision in the grievance and arbitration clause of the contract that provides: "No Officer shall be discharged except for proper cause such as but not limited to inefficiency, insubordination, carelessness, or disregard of the rules of the Company. ... Discharge cases shall be subject to the expedited grievance procedure outlined in Article 13."

What is totally ignored by the panel in this provision and yet is critical to its interpretation is the fact that it provides in so many words that the "discharge case" is subject to the grievance procedure. "Case" means "case", not part of the case, as the panel urges. It would have been easy indeed, if the parties meant it, for that provision to have read: "The issue of prop-

---

1. The panel opinion did not evaluate the merits of the mitigation of punishment because it found a lack of authority. On this question, suffice it to say that it is well-established that if the arbitrator has the right to review the punishment, disparate or discriminatory punishment is firmly established as a proper consideration.

The company urged that the other instances to which the arbitrator referred were not com-parable because the contract wording had been changed. It had, but it requires reading a clearly disjunctive phrase as conjunctive for the change to have any possible effect on this case.

In any event, the comparability of the earlier instance was clearly a matter for the arbitrator, not the courts.

er cause in discharge cases shall be subject to the expedited grievance procedure...." Instead, the contract in terms submits the entire case to the grievance and arbitration procedure.

Further, the breadth of this provision is supported and reinforced by another contract provision in the grievance/arbitration section of the contract which reads that the parties agree to: "*arbitrate* all complaints, disputes, or grievances arising between the parties ... relating to or in connection with or involving questions of interpretation or *application* of *any* clause of this agreement or any acts, conduct or relations between the parties, directly or indirectly,...." (emphasis added).

The panel opinion relies heavily upon our decision in *Container Products, Inc. v. United Steelworkers*, 873 F.2d 818 (5th Cir.1989). Indeed, the panel says that the decision in *Delta Queen* is controlled by the *Container Products* case. Yet in stark contrast to *Delta Queen*, the *Container Products* case contained a specific and literal contract provision which denied to the arbitrator the power to evaluate discipline. The words are: "Should it be determined by the arbitrator that an employee has been suspended or discharged for proper cause therefor the arbitrator shall not have jurisdiction to modify the degree of discipline imposed by the company." 873 F.2d at 818. That provision is completely unambiguous and must be accepted in its precise terms. There is no analogous provision in the *Delta Queen* contract. It does not say that "proper cause" shall be submitted to the grievance and arbitration procedure, it says that the "discharge *case*" shall be submitted to the grievance procedure and arbitration. "Case" obviously includes the whole case—proper cause and also discipline.

One of the absolute fundamentals of the extensive common law of labor arbitration is that the arbitrator has authority to modify the amount of discipline unless, as in Container Products, there is a specific denial of that right in the contract. There is no need to undertake a long string citation of cases which establish this proposition. This Court made it clear in the opinion by Judge Brown, *Gulf Co. v. Local 1692, IBEW*, 416 F.2d 198, 202 n. 10 (5th Cir. 1969), when we said, "Arbitral determination not only of the existence of misconduct but of the fitness of punishment is routinely grist for the arbitral mill." Lest it be felt that this view is outmoded, this case was cited and the statement quoted with approval in *Northwest Airlines v. Air Line Pilots*, 808 F.2d 76, 81 n. 25 (D.C.Cir.1987).

The principle is confirmed in the texts on labor arbitration. Thus, one of the basic texts is cited by the Supreme Court in *Misco*, 108 S.Ct. at 371 n. 8. It is Elkonri and Elkonri, How Arbitration Works (1973). At p. 628 it says: "Where the agreement fails to deal with the matter [of modifying penalties] the right of the arbitrator to change or modify penalties found to be improper or too severe may be deemed to be inherent in his power to decide the sufficiency of cause."

Similar comment is found in Hill & Sinicro, Remedies in Arbitration (1981), at p. 101: "Before arbitrators will recognize such limitation [on the power to modify discipline], however, the agreement must contain clear language that the arbitrator is not to have discretion to reduce a penalty." The book then goes on to say that a contract provision prohibiting an arbitrator from "modifying, amending, adding to, or subtracting from" the agreement does not constitute such specific wording to limit the arbitrator's authority to modify discipline.

To the contrary is, e.g. *S.D. Warren Co. v. Paperworkers*, 815 F.2d 178 (1st Cir. 1987), which held the arbitrator has no such power to modify the discipline unless the contract grants it specifically. This view is strongly criticized as unrealistic by Judge Reinhardt of the U.S. Court of Appeals, Ninth Circuit. Speaking before the 40th annual meeting of the National Academy of Arbitrators, he called the doctrine a "dangerous principle" because it would make Management Rights clauses absolute except for detailed exceptions which must

cover every conceivable contingency.[2] In effect this requirement would wipe out the common law of the industry and the shop[3] as to such basic questions as to what constitutes just cause and the well-established principle of progressive discipline.

It is true that some court cases in the 1970s and 1980s, as did *S.D. Warren* (decided before *Misco*), began to develop principles of broader review of arbitration decisions, some even equating such review with the scope of review of district court decisions by the Courts of Appeals.

Some of the courts were moving away from the "trilogy"[4] cases believing they protected the arbitration process too broadly. But those cases went "by the boards" when the Supreme Court handed down *Misco*. In that case the Court made clear it was confirming the basic law of the "trilogy" by citing those cases with approval, referring to the common law of the shop, and defining and emphasizing the narrowness of judicial review.

It is not at all common for contracts to write in specific limitation upon the arbitrator's power over discipline. Thus, as the Supreme Court in *Misco* taught us: "Normally, an arbitrator is authorized to disagree with the sanction imposed for employee misconduct." 108 S.Ct. at 372. In *Enterprise Wheel*, one of the "trilogy", for example, the arbitrator reduced the discipline from discharge to a ten day suspension. The Court of Appeals refused to enforce the award, but the Supreme Court reversed explaining that although the arbitrator's decision must draw its essence from the agreement, he "is to bring his informed judgment to bear in order to reach a fair solution of a problem. *This is especially true when it comes to formulating remedies.* 363 U.S. at 597, 80 S.Ct. at 1361 (emphasis added)." Then the Court

went on to state that the parties can, of course, limit the discretion of the arbitrator. But the contract in *Delta Queen* did not do so, as it had done specifically in *Container Products.*

One of the cases in the "trilogy" stated the controlling principle clearly and succinctly. *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584, 80 S.Ct. 1347, 1354, 4 L.Ed.2d 1409 (1960). The Court said: "In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."

The ultimate controlling principle in this case is that this Court had no right to interpret the contract to forbid the arbitrator the power to mitigate the discipline because, at best, the contract is ambiguous. *Misco* made clear that the inquiry is not what the court decides that the contract provides. It is whether the arbitrator's interpretation is a reasonable one, not whether it is the "right" one.

Thus, the Court did not follow the well-established law which the Supreme Court spelled out in detail and directed at this Court and other courts in the 1987 *Misco* opinion. After noting what the law is by this most recent comprehensive statement by the United States Supreme Court, I am at a total loss to understand the Court's failure en banc to correct the error of the panel in *Delta Queen*. Two specific quotations from *Misco* should suffice to show the Court's error. They summarize effectively the law as I have stated it. Further, they show that the Supreme Court was bringing to a halt the possible trend to broaden the scope of judicial power. The quotations are:

**2.** National Academy of Arbitrators, 40th Annual Meeting volume, Arbitration 1987, p. 37 (1987).

**3.** *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960).

**4.** The "trilogy" is well known in labor law. It consists of three cases decided the same day by the Supreme Court. Together, they outlined in

detail the law governing labor arbitration and the role of the courts. They are: *Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *Steelworkers v. Enterprise Wheel & Car*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the *meaning of the contract* that they have agreed to accept. Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.

108 S.Ct. at 370.

The arbitrator may not ignore the plain language of the contract, but the parties have authorized the arbitrator to give meaning to the language of the agreement. A court should not reject the award on the ground that the arbitrator misread the contract. ... Furthermore, it must be remembered that grievance and arbitration procedures are part and parcel of the ongoing process of collective bargaining. It is through these processes that the supplementary rules of the plant are established. As the court has said, the arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice. But as long as the arbitrator is *even arguably construing* or applying *the contract* and acting within the scope of its authority, that a court is convinced he committed serious error does not suffice to overturn his decision. (Emphasis added).

108 S.Ct. at 371.

These authoritative statements of the governing law show why I must challenge the panel in its opinion. In the light of the contract wording it is inescapable that the arbitrator was *"arguably* construing or applying the contract and acting within the scope of its authority...." Instead, the panel uses the "jurisdiction" or "non-arbitrability" rubric to paper over the fact that the issue was one of contract interpretation and application. It is a common claim but rarely accepted by arbitrators and, fortunately, the courts, that an asserted incorrect interpretation of the contract means that the arbitrator exceeded his or her jurisdiction. As Judge Brown with prescient

wisdom said in *Gulf States Telephone Co.,* 416 F.2d at 201. An employer "as an almost automatic instinctive reflex to an adverse award on the merits assert[s] the Gemini attack of lack of the arbitrator's 'authority' to decide as he did." This is the error into which the Court in *Delta Queen* falls. It is obviously not within the ken of the law as authoritatively stated by the United States Supreme Court in *Misco.* Must I remind that the Supreme Court unanimously reversed this Court once before when we tried to intrude in the arbitration process once before.

All of the courts went through a period some years ago, before the trilogy, in which they kept throwing out arbitrator's awards when they did not agree with them on the ground that the arbitrators were not applying the contract and therefore lacked jurisdiction. The analysis was, in effect: "We reasonable judges can see that if one reads and applies this contract carefully one will not come out that way." That kind of judicial intrusion in the arbitration process has been effectively quieted by the principles the Supreme Court has given us in the earlier trilogy cases and now in the *Misco* case in Justice White's confirmation of those cases which he coupled with a careful outline of the stringent limitations upon judicial review of arbitration. No matter if we feel the arbitrator's decision is seriously faulted, we have no right to interfere with it.

I find it particularly disturbing that in the current widespread emphasis upon the importance of encouraging Alternative Dispute Resolution (ADR) that this Court in *Delta Queen* is turning its back on a developed and effective ADR procedure which has saved and is saving courts and parties untold time and expense. Instead, *Delta Queen* is sending a signal to companies that lose labor arbitrations which says: "Come to us! If we think the interpretation of your contract is wrong even though the provision is ambiguous, we will find for you that the arbitrator exceeded his jurisdiction and set his award aside." It is because *Delta Queen* sends this reversionary signal loud and clear, I am constrained

to file this dissent from the denial of a rehearing en banc.