LOCAL 866, INTERNATIONAL BROTHERHOOD OF TEAM-
STERS CHAUFFEURS, WAREHOUSEMAN AND HELP-
ERS OF AMERICA, AN UNINCORPORATED ASSOCIA-
TION, PLAINTIFF, v. LODI BOARD OF EDUCATION, DE-
FENDANT.

Superior Court of New Jersey
Chancery Division

Decided February 11, 1977.

148

*Mr. Howard A. Goldberger,* for plaintiff (*Messrs. Goldberger, Siegel & Finn,* attorneys).

*Mr. Gerald P. Lo Proto,* for defendant.

*Mr. William F. Hyland,* Attorney General (*Mr. Arnold Lakind,* Deputy Attorney General, appearing), for Department of Civil Service *amicus curiae.*

GELMAN, J. S. C. This action presents another of the perplexing problems arising out of the application of the public sector bargaining provisions of the New Jersey Employer-Employee Relations Act, *N. J. S. A.* 34:13A–1 *et seq.* Spe-

cifically, the issue here is the relationship between the act and certain provisions of the Civil Service Law.

The facts which give rise to this controversy are not in dispute. Plaintiff (Local 866) is the certified representative of the custodial and maintenance employees of the defendant Lodi Board of Education (board), and since 1949 all such employees of the board have been covered under the provisions of the Civil Service Law, *N. J. S. A.* 11:19-1 *et seq.* Effective July 1, 1973, Local 866 and the board entered into a collective bargaining agreement which contemplated the creation of the position of "leadman," lying on the line of promotion between custodian and head custodian. Under the terms of the agreement leadmen were to be paid at a rate $400 above that of custodians. Four custodians were initially appointed to this position by the board, and two others were added at a later date.

After the agreement was executed the board submitted to the Department of Civil Service (Department) a description of the duties and responsibilities of the leadman position. On December 22, 1973 the position was classified by the Department as falling under the title "senior custodian." A promotional examination, open to all custodians with one year in service, was conducted, and on September 28, 1974 the Department certified five individuals as eligible for appointment to the leadman position. The board failed to appoint any of the successful examination candidates, whereupon the Department issued a payroll disapproval. The board responded to this action by abolishing the leadman position and rescinding the earlier appointments. The Department then lifted the payroll disapproval.

The six individuals who had been appointed leadmen filed a grievance with the board which resulted in an arbitration award on September 5, 1975. The arbitrator concluded that the leadman position was created by a collective negotiation agreement and that the board had violated the agreement by unilaterally abolishing the position. The arbitrator directed the board to restore the leadman job clas-

sification immediately and to make the six employees who had been leadmen "whole for their loss of salary."

The board refused to carry out the terms of the award, and in March 1976 Local 866 filed this action to enforce the award and to recover back pay for the employees involved. The board in its answer asserted that it was obligated both under the terms of its contract with Local 866 and under the Civil Service Law to comply with the directives of the Department and was compelled to abolish the position of leadman. On August 5, 1976 the Department of Civil Service was granted leave to intervene as *amicus curiae*. Plaintiff has now moved for summary judgment.

The scope of judicial review of an arbitrator's award is, of course, limited. *Daly v. Komline-Sanderson Engineering Corp.*, 40 *N. J.* 175, 178 (1963); *Local Union 560 v. Eazor Express, Inc.*, 95 *N. J. Super.* 219, 227 (App. Div. 1967); see *N. J. S. A.* 2A:24–8. While much has been written in an attempt to articulate the basis upon which a court may vacate or modify an award in arbitration, it has been generally accepted that neither the merits of the award nor the factual findings of the arbitrator (unless tainted by misconduct or corruption) may be challenged. See *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 *U. S.* 564, 570, 80 *S. Ct.* 1358, 4 *L. Ed.* 2d 1424 (1960); *Held v. Comfort Bus Line, Inc.*, 136 *N. J. L.* 640, 642 (Sup. Ct. 1948). *Igoe Bros., Inc. v. Nat'l Ben Franklin Fire Ins. Co.*, 110 *N. J. Eq.* 373, 376 (E. & A. 1932); *Bell v. Price*, 22 *N. J. L.* 578, 590 (E. & A. 1849). Where the arbitrator, however, has passed upon a question of law, particularly one of first impression, and has based his decision on an interpretation and application of the law to the facts he has found, judicial review of his disposition of the legal issues has generally been sanctioned.[1] *See Brooks v. Pa.*

---

[1] On the other hand, the arbitrator is apparently free to reject applicable law and render an award in accordance with his own concept of justice and equity. See *Collingswood Hosiery Mills v. Amer.*,

*Manu. Assoc. Inc. Co.,* 121 *N. J. Super.* 51, 54 (App. Div. 1972), mod. on other grounds 62 *N. J.* 583 (1973); *Harsen v. West Milford Tp. Bd. of Ed.,* 132 *N. J. Super.* 365, 372 (Law Div. 1975); *Held v. Comfort Bus Line, Inc., supra* at 641–642; *Schenck's Adm'r v. Cuttrell,* 2 *N. J. Eq.* 297, 301 (Ch. 1840).

In this instance the arbitrator expressly disclaimed any attempt to deal with the legal issue projected by the board, *viz.,* whether the board was bound to comply with a directive of the Department of Civil Service. He reasoned that arbitrators have no expertise in the law, are often without any formal legal training, and should "stay within their particular ballpark", *i. e.,* the interpretation of the agreement itself. Thus constrained, the arbitrator concluded that the parties intended to establish and maintain the position of leadman and that the board could not unilaterally abolish the position.

The arbitrator's finding of a contract violation by the board is clearly correct and the board's argument that it was only complying with the Department's order is specious. The Department never ordered the board to take such action; its discretion to the Board was, in accordance with *N. J. S. A.* 11:22–16, to appoint eligible candidates to the position in question. Under the terms of the contract the board was obligated to comply with the Department's order inasmuch as the contract guaranteed to all employees their rights under the Civil Service Law.[2]

Insofar as the arbitrator found a contract violation and directed the board to restore the leadman position, this

---

*etc., Workers,* 31 *N. J. Super.* 466, 471 (App. Div. 1954); *Bell v. Price, supra* at 590. It may be queried, however, whether this principle is a viable one in reviewing arbitration awards involving public employees. *Cf. Belardinelli v. Werner Continental, Inc.,* 128 *N. J. Super.* 1 (App. Div. 1974).

[2]"It is further provided that nothing herein shall be construed to deny to any individual employee his rights under Civil Service, State or Federal Laws." See also *N. J. S. A.* 34:13A-5.3.

court concurs in the award and will grant judgment in favor of Local 866. Where the arbitrator went astray, however, was in awarding back pay to the six temporary appointees. Once the Department had established an eligible list for the leadman position, those employees who had previously been appointed by the board were no longer entitled to retain the position and were not entitled to the increased compensation which it carried. Under the Civil Service Law, as well as the plain terms of the contract itself, they had no grievance to assert against the Board; the employees who had the grievance were those who had been certified as eligible for promotion by the Department, but whose promotions were denied by the board's unilateral and wrongful action in abolishing the position.

Local 866 urges that the Department's promulgation of an eligible list — indeed, the total impact of the Civil Service Law — should be ignored in this setting since the application of the Civil Service Law is in conflict with the language if not the spirit of the 1974 amendments to the New Jersey Employer-Employee Relations Act, *N. J. S. A.* 34:13A–1 *et seq.* (*L.* 1974, *c.* 123). While the Appellate Division has recently held that the 1974 amendments should not be construed so as to interfere with the application of the Civil Service Law, see *P.B.A. Elizabeth Local #4 v. City of Elizabeth,* 146 *N. J. Super.* 257 (App. Div. 1977), it is not necessary to reach that issue in this case.

The Public Employment Relations Act cannot and should not be read so as to *ipso facto* annul the applicability of the Civil Service Law to the public sector bargaining process. Indeed, the act specifically preserves the Civil Service rights of individual employees. *N. J. S. A.* 34:13A–5.3; *see Lullo v. International Ass'n of Fire Fighters,* 55 *N. J.* 409, 440 (1970). The two statutory schemes must be construed in harmony with each other for the protection of both public employers and their employees and to achieve the manifest legislative purpose of diminishing labor controversies in public employment. *Cf. Red*

*Bank Bd. of Ed. v. Warrington,* 138 *N. J. Super.* 564, 569 (App. Div. 1976). On the facts of this controversy, there is no conflict at all between the two statutory schemes. The board and Local 866 were free to negotiate for the creation of a new custodial position which was approved by the Department of Civil Service. Once the eligible list was promulgated by the Department, the board was obligated to make appointments to the position in accordance with Civil Service Law and the contract it had negotiated with its employees under the Public Employment Relations Act. Nothing in either statutory scheme sanctioned the board's unilateral abrogation of the agreement; the mandate of both statutes required the board to fulfill the terms of its agreement and to appoint only those eligible to the position. The temporary appointees thereupon ceased to have any further right or entitlement to the position or to any increased compensation, and for the arbitrator to have awarded them back pay is inconsistent with the laws of this State and with the contract of the parties.

Judgment will be entered directing the board to reinstate the position of leadman and to appoint to the position persons certified as eligible by the Department of Civil Service. To the extent that the complaint seeks recovery of back pay on behalf of the grievants, it will be dismissed.