**DURABOND PRODUCTS COMPANY, INC., Plaintiff,**

v.

**WAREHOUSE, MAIL ORDER, OFFICE, TECHNICAL AND PROFESSIONAL EMPLOYEES' UNION, LOCAL NO. 743, I.B. of T., Defendant.**

**No. 80 C 4159.**

United States District Court, N. D. Illinois, E. D.

Nov. 24, 1980.

John A. McDonald, Carla J. Rozycki, Keck, Mahin & Cate, Chicago, Ill., for plaintiff.

Donald W. Cohen, Marvin Gittler, Asher, Goodstein, Pavalon, Gittler, Greenfield & Segall, Ltd., Chicago, Ill., for defendant.

MEMORANDUM OPINION AND ORDER

MILTON I. SHADUR, District Judge.

Durabond Products Company, Inc. ("Durabond") filed this action against Warehouse, Mail Order, Office, Technical and Professional Employees' Union, Local No. 743, I.B. of T. (the "Union") under Section 301(a) of the Labor Management Relations Act. At issue is the decision of arbitrator Bert L. Luskin that the December 18, 1978 collective bargaining agreement between Durabond and the Union does not prohibit the Union from striking upon reaching an impasse in negotiations under a wage reopener clause.

Durabond contends that decision was "arbitrary, capricious and unreasonable" and requests the Court to set it aside, prohibit the Union from striking over an impasse in negotiations regarding the wage reopener, and order further relief "as the Court may deem just and equitable." Union and Durabond have both moved for summary judgment. For the reasons stated in this memorandum opinion and order, the Union's motion is granted and Durabond's is denied.

### The Facts

Durabond and the Union, which represents Durabond's warehouse, production and maintenance employees (with limited exceptions), entered into a comprehensive Labor Contract and Working Agreement (the "Agreement") effective December 18, 1978. Three provisions of the Agreement are pertinent to the instant motions:

1. Its "Termination" clause states in part: "THIS AGREEMENT shall be in full force and effect from December 18, 1978 to and including December 15, 1980, except as provided in Section 3 with respect to the wage re–opener on December 18, 1979. . . ."

2. Section 3.2, which establishes various wage rates, ends with the provision that "As of December 18, 1979 the contract will be reopened on the issue of wages."

3. Section 19.1 provides in part: "The Union agrees that there will be no strikes, walkouts, slowdowns, or any other interruptions of work during the life of this Agreement."

In fact the Union did reopen the issue of wages approximately December 18, 1979. Negotiations deadlocked on January 30, 1980 and the Union filed a grievance contending that Durabond had refused to agree to a "fair wage increase." During February and early March 1980 the parties agreed to submit to arbitration the ques-

tions (1) whether the Union's grievance was arbitrable under the Agreement and (2) whether the Union was entitled to strike "in the event of an impasse over collective bargaining."

Arbitrator Luskin, who had been mutually selected by Durabond and the Union, ruled (1) that Durabond was not required to submit wage reopener–related issues to arbitration but (2) that "[t]he contract does not prevent the Union from engaging in a strike after the parties reach an impasse in negotiations following the wage re–opener of December 15, 1979." Arbitrator Luskin reviewed the provisions of the Agreement quoted in this opinion and concluded:

> The re–opener did take place and the parties were unable to reach agreement. The Termination provision of the Agreement provides that the Agreement shall be in full force and effect from December 15, 1978, and until December 15, 1980, "except as provided in Section 3 with respect to the wage re–opener on December 15, 1979. . . ." In the opinion of the arbitrator, that language served to provide the Union with the right to avail itself of a right to strike in the event that an impasse resulted from the negotiations that followed the re–opener on wages.

### This Court's Role in the Proceedings

 Durabond contends that the arbitrator's decision must be set aside because it "arbitrarily, capriciously and unreasonably" contravenes the plain and unequivocal language of Section 19.1 of the Agreement. At the outset, it is essential to recognize that the Court's task is not to construe the contract *de novo*. Rather, as developed in part of the "Steel Workers Trilogy"[1] (363 U.S. at 596, 599, 80 S.Ct. at 1360–1362):

> The refusal of courts to review *the merits* of an arbitration award is the proper approach to arbitration under collective bargaining agreements. . . . It is the arbitrator's construction which was bar-

gained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.

And again (*Id.* at 568, 80 S.Ct. at 1346):

> The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for.

 All this does not mean of course that an arbitrator's decision is non–reviewable. His award is legitimate "only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest infidelity to this obligation, courts have no choice but to refuse enforcement. . . ." *Id.* at 597, 80 S.Ct. at 1361. However, "[a]n arbitrator's award does 'draw its essence from the collective bargaining agreement' so long as the interpretation can in some rational manner be derived from the agreement. . . Neither the correctness of the arbitrator's conclusion nor the propriety of his reasoning is relevant to a reviewing court so long as his award complies with the aforementioned standards." *Amoco Oil Company v. Oil, Chemical and Atomic Workers International Union, Local 7–1, Inc.*, 548 F.2d 1288, 1294 (7th Cir. 1977); *accord, F. W. Woolworth Co. v. Miscellaneous Warehousemen's Union, Local No. 781*, 629 F.2d 1204 (7th Cir. 1980).

 Contrary to Durabond's argument, it is not plain that "the award contravenes the

---

1. *United Steel Workers of America v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steel Workers of America v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and *United Steel Workers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

express provisions of the contract." Although Section 19.1 "clearly and unambiguously" (as Durabond puts it) precludes the Union from striking "during the life of this Agreement," it is this *last* phrase that required the arbitrator's interpretation. And on that score there *are* two ways in which the Agreement may be read.

It would certainly have been possible for the arbitrator to conclude, as Durabond contends, that the "life of this Agreement" continued despite the reopening on wages, so that the no–strike agreement retained its full force. But it is also true that the language "except as provided in Section 3 with respect to the wage opener on December 18, 1979" is a *direct* modification of the provision that the Agreement "shall be in full force and effect ... to and including December 18, 1980." It is thus also a *permissible* reading that the "life of this Agreement" could be terminated "with respect to the wage re–opener," so that a strike over a dispute resulting from an impasse on that subject would not contravene the no–strike clause.

It must be emphasized that the issue is not which of the available interpretations this Court might regard as more plausible (or put another way, which way this Court might have resolved the question if the parties had selected *it* as the arbitrator).[2] It is rather whether the arbitrator's decision is wholly without foundation in the Agreement. That cannot be said—it reflects a plausible, though not the only possible, reading of the Agreement. Such plausibility meets the *Steelworkers Trilogy* test, and under the teaching of those cases the arbitrator's decision must prevail.

### Conclusion

There are no genuine issues of material fact, and the Union is entitled to a judgment as a matter of law. Its motion for summary judgment is granted and Durabond's cross–motion for summary judgment is denied.

---

**2.** *CWA v. Continental Telephone Co.*, 94 LRRM 2186 (E.D.Va.1976), on which Durabond relies heavily, is inapposite for that reason, as well as because of the material differences in the contract language. In that case the Court was construing the collective bargaining agreement in the first instance rather than reviewing an arbitrator's decision.