**UNITED TRANSPORTATION UNION, Plaintiff,**

v.

**TRAILWAYS, INC., Defendant.**

**Civ. A. No. 86–1502.**

United States District Court,
District of Columbia.

July 9, 1987.

Edward D. Friedman, Elizabeth A. Ginsburg, Friedman & Wirtz, Washington, D.C., for plaintiff.

Louis R. Moffa, Schnader, Harrison, Segal & Lewis, Washington, D.C., James H. Baumgartner, Jr., Louis Abraham, III, Vial, Hamilton, Koch & Knox, Dallas, Tex., for defendant.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

This is an action pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, for enforcement of an arbitration award. On March 12, 1987, the Court denied defendant's motion to dismiss which questioned the finality of the arbitrator's decision. The Court explicitly noted that, to the extent that the arbitration award was not "final," as not containing a computation of the exact sums to be paid to each employee, it was defendant's lack of compliance with the arbitrator's requirement to furnish the figures necessary to that computation that was responsible, and that defendant therefore could not complain about the lack of finality. *See* Memorandum and Order of March 12, 1987.[1] Presently pending before the Court is plaintiff's motion for summary judgment.

The litigants are an employer (Trailways) and a labor union, United Transportation Union (UTU), which were engaged in nationwide collective bargaining. In 1983, the parties reached an agreement valid from April 1, 1983 through March 31, 1985, which, as relevant for present purposes, contained a most favored nation agreement,[2] an agreement for setting wage rates and cost of living increases, and a binding arbitration clause.

There came a time when the union concluded that Trailways had violated the most favored nation agreement and grieved the company's actions, and the parties moved to arbitration. The arbitrator made findings on October 28, 1985 in favor of the union on the most favored nation agreement as well as on unilateral wage reductions. He also found that the union had properly grieved the violations, and that these violations were arbitrable. The arbitrator thereupon directed the company to "determine the amounts by which the economic benefits paid to UTU members under the 1983 national contracts were exceeded by the benefits paid to [members of other unions] and to compensate UTU members in the amounts necessary to equalize such benefits."

As the Court noted on March 12, 1987, Trailways failed and refused, under various pretexts, to submit the necessary figures notwithstanding repeated directions by the arbitrator. On the morning of a status call in this Court, Trailways did finally submit data from which a statistician was able to calculate the amount of the backpay due to almost all of the affected employees. Armed with these figures, the union thereupon returned to the arbitrator for a final determination based on the unchallenged calcu-

---

1. The Court also denied defendant's request to transfer this case to the District Court for the Northern District of Texas.

2. The agreement was designed to ensure that employees represented by the United Transportation Union would not be disadvantaged by more favorable terms negotiated with another labor union.

lations. Again the company missed several deadlines, but in the end it essentially verified the union's figures and computations. On October 31, 1986, the arbitrator issued a supplemental award for payments to individual employees. Trailways' refusal to comply is now before the Court on plaintiff's motion for summary judgment.

■ It is settled that courts must be deferential to arbitral awards, and that in particular that they may not weigh the merits of a grievance or consider whether there is equity in a particular claim. *Office of Professional Employees International Union, Local 2 v. Washington Metropolitan Area Transit Authority (OPEIU)*, 724 F.2d 133 (D.C.Cir.1983). As the appellate tribunal there stated, a court may only consider the issues left open for judicial inquiry by the "Steelworkers Trilogy"[3]—whether the award was arbitrary and capricious; whether it was sufficiently definite; whether it exceeded the scope of the arbitrator's jurisdiction; whether the arbitrator was partial; and whether he reached a result contrary to the record evidence. On the jurisdictional question, the Court must conclude (1) that the award drew its "essence" from the collective bargaining agreement or the "law of the shop," and (2) that the arbitrator did not grossly deviate from his authority or reached a result contrary to record evidence.

■ In view of this narrow standard, the arguments advanced by Trailways are rather curious. Again and again in its papers, the company seeks to involve the Court in the task of overturning decisions of the arbitrator that, by any reasonable standard, were clearly within his jurisdiction. Thus, Trailways contends that the arbitrator ignored specific contractual language (Response at 3, 8); that he was animated by a "zeal to create his own brand of industrial justice" (Response at 6, 15); that,

contrary to the arbitrator's findings, the contract was not ambiguous (Response at 9, 18); that the arbitrator "concluded incorrectly" the timing of the request for arbitration (Memorandum at 7);[4] that it went against the common understanding of the word "negotiation" to give the contract a ratchet effect (Memorandum at 11); that because the no strike clause of the contract allegedly conflicted with the right to strike recognized elsewhere in the agreement, the arbitrator's decisions are open to review by the Court (Memorandum at 14); and that arbitration "must reach a rational and fair result based on more than a passing measure of the Federal common law of labor" (Memorandum at 20).

Even where the company relies on decisional authority, it misses the point. Thus, it cites *NLRB v. Lion Oil Co.*, 352 U.S. 282, 77 S.Ct. 330, 1 L.Ed.2d 331 (1957), in support of the proposition that when the union gave notification of its intent to modify the agreement this operated, "as a matter of law ... [to effect] ... a termination date of the contract as to economics at March 31, 1984." Response at 11–12. However *Lion Oil* involved a construction of the terms "termination or modification" and "expiration" in section 8(d)(1) of the National Labor Relations Act, as amended—an issue that differs fundamentally from one concerning the meaning of terminology in a collective bargaining agreement. Indeed, although the statutory language was held in *Lion Oil* to effect an expiration, the Court specifically noted that "at all relevant times a collective bargaining agreement was in effect" (352 U.S. at 287, 77 S.Ct. at 333) and that the "statutory notice requirement operates wholly independently of whatever notice requirement the parties have fixed for themselves" (352 U.S. at 293–94, 77 S.Ct. at 336).

---

**3.** *See United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

**4.** There are many decisions holding that the issue of timeliness is a matter of procedural arbitrability to be resolved by the arbitrator, *e.g., Local 1401, Retail Clerks International Association v. Woodman's Food Market, Inc.*, 371 F.2d 199, 201 (7th Cir.1966).

Without further belaboring the obvious, the Court concludes that a valid and binding arbitration award is in existence; that Trailways has delayed far too long complying with that award; and that the time has now come where further delay will not be tolerated.[5]

Contemporaneously herewith, the Court is issuing an order granting plaintiff's motion for summary judgment and requiring defendant to pay within ten days the amounts specified in the arbitrator's supplemental award with interest and in all other respects comply with the arbitrator's final remedial award.

---

**5.** *See Dreis & Krump Manufacturing Company v. International Association of Machinists and Aerospace Workers, District No. 8,* 802 F.2d 247, 249 (7th Cir.1986), where Judge Posner, speaking for a unanimous court, stated in language pertinent here:

> The timetable suggests something profoundly wrong about this litigation. Labor arbitration is supposed to be a speedy and efficacious

remedy for disputes arising out of the administration of collective bargaining agreements. Yet almost three and a half years have passed since the union filed its grievance of behalf of Crawford, and the grievance is still unresolved. It should have been resolved more than two years ago, when the arbitrator issued his decision.