*844 GRUENDER, Circuit Judge,
dissenting.
I agree with the district court that this is the rare case in which we should vacate an arbitrator’s award. The arbitrator here ignored the plain language of the collective bargaining agreement. When three plants are sold to another party and continue operating seamlessly with the same employees during and after that sale, the plants cannot have closed completely and permanently such that the seller must then pay severance benefits. Yet the arbitrator here awarded severance benefits. The district court’s judgment vacating this award should be affirmed.
Courts must give considerable deference to arbitration awards. On this point, the court and I agree. In a labor dispute such as this, the parties have “agreed to submit all questions of contract interpretation to the arbitrator.” Misco, 484 U.S. at 36-37, 108 S.Ct. 364 (quoting United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 567-68, 80 S.Ct. 1363, 4 L.Ed.2d 1432 (1960)). “[I]t is the arbitrator’s view of the facts and of the meaning of the contract that [the parties] have agreed to accept.” Id. at 37-38, 108 S.Ct. 364. As a result, “[a] reviewing court cannot overturn an arbitrator’s award even if the court is convinced the arbitrator committed serious error so long as the arbitrator was arguably construing or applying the contract.” Excel Corp., 102 F.3d at 1467. But an arbitrator’s authority to issue an award is not unlimited. As the court recognizes, ante at 841, if an arbitration award does not “draw[] its essence from the collective bargaining agreement” because it reflects the arbitrator’s “own brand of industrial justice,” then the court should vacate that award. Enter. Wheel, 363 U.S. at 597, 80 S.Ct. 1358. That is to say, “[t]he arbitrator may not ignore the plain language of the contract,” Misco, 484 U.S. at 38, 108 S.Ct. 364, or “interpret ] unambiguous language in any way different from its plain meaning.” Inter-City, 845 F.2d at 187 (quoting Teter Tool & Die, 630 F.Supp. at 736). In so doing, the arbitrator “amends or alters the agreement and acts without authority.” Id. Thus, where the arbitrator departs from the unambiguous language of the contract in granting an award, the court should vacate that award.
Here, the severance provision of the collective bargaining agreement is unambiguous. It states:
If the Company shall close a plant completely and permanently, employees whose employment shall be terminated as a result thereof and who at the time shall have a length of continuous service with the Company of five (5) years or more, shall be entitled to a Severance allowance as follows....
By operation of this provision, qualifying employees are entitled to severance benefits only if (1) “the Company shall close a plant completely and permanently” and (2) that closure results in the termination of their employment. Although the collective bargaining agreement does not itself define the term “close,” the term is commonly understood, and is defined, as meaning “[t]o conclude; to bring to an end.” Black’s Law Dictionary 271 (8th ed.2004). As the district court correctly reasoned: “The word ‘closed’ is meant to distinguish it from ‘open.’ The word ‘completely’ is meant to distinguish it from ‘partially.’ The reference to ‘permanently’ is meant to distinguish it from ‘temporarily.’ ” This unambiguous language should have made this an easy case. Cf. Smullin, 420 F.3d at 838 (concluding, in the context of the WARN Act, that “[i]t is obvious ” that a plant does not close when employees at the plant “did not miss even a day of operation” (emphasis added)). Under questioning at the ar *845 bitration hearing, Mark Cooper, a witness for the Unions, conceded:
Q: [D]o you have any information that would indicate that the [three plants] were ever closed even for a minute? I’m not asking about ownership, I’m just saying did they shut the places down?
A: No.
Furthermore, as the court notes, ante at 840, Bemis hired all of the Alcan workers who applied to work for Bemis. Accordingly, since the plants at issue did not “close”—much less “close ... completely and permanently”—and since the employees were not terminated as a result thereof, the severance provision was not triggered.
The arbitrator attempts to sidestep this self-evident conclusion by asserting that “when a company goes out of a line of business by selling a plant it has, as far as its employees in that plant are concerned, completely and permanently closed.” The court asserts that this interpretive effort by the arbitrator, with its “hallmarks of an honest judgment,” disposes of this case. Ante at 841-43. According to the court, if the arbitrator makes any attempt at interpretation, as the arbitrator did here, the arbitrator’s decision must stand. Not so. We have explained that “if the arbitrator ‘interprets unambiguous language in any way different from its plain meaning, [the arbitrator] amends or alters the agreement and acts without authority.’ ” Inter-City, 845 F.2d at 187 (quoting Teter Tool & Die, 630 F.Supp. at 736) (alteration in original). In other words, “the arbitrator may not disregard or modify unambiguous contract provisions.” Id. (emphasis added). Accordingly, an interpretive effort by the arbitrator does not mean that the arbitrator’s decision must stand, if in so doing the arbitrator modifies unambiguous language.
The arbitrator’s attempt to introduce ambiguity into the severance provision falls flat.[1] According to the arbitrator, plant closure is employer-specific as opposed to facility-specific. That is to say, when Alcan sold its plants to Bemis, the plants were permanently and completely closed as between Alcan and its employees. That closure is unambiguously facility-specific becomes obvious when the severance provision is viewed in the larger context of the collective bargaining agreement, as applied by the arbitrator. Specifically, the successors and assigns clause of the collective bargaining agreement states: “[N]o merger, purchase, sale, transfer, assignment or consolidation, shall terminate or suspend this contract or relieve an employer ... a transferee, purchaser, successor, or assignee, from the obligation to comply with the terms and conditions of this contract.” Since Bemis contracted around this provision, the arbitrator applied this provision against Alcan.[2] Thus, even though Alcan may no longer be the employer, the Bemis employees, by operation of this clause, are still entitled to the benefits of the collective bargaining agreement. *846 As counsel for the Unions conceded at oral argument, Alcan is therefore required to “make up the differences” between the Alcan and the Bemis contracts. This is significant because, as the court notes, ante at 840, Bemis hired Alcan’s employees under less favorable terms than the workers had under their collective bargaining agreement with Alcan. With this established, the incongruity of the arbitrator’s award comes into full view. The arbitrator required that (1) Alcan honor the collective bargaining agreement as if the Bemis employees were still working for Alcan and that (2) Alcan pay severance benefits due to a complete and permanent closure of the plants. Both cannot be true. Either the plants closed, leaving Alcan on the hook for severance benefits, or the plants did not close, leaving Alcan on the hook for full pay and benefits as provided in the Alcan collective bargaining agreement. The arbitrator, however, ignored this “either-or” by awarding a double recovery, a windfall surely not contemplated by the collective bargaining agreement. In so doing, the arbitrator “dispense[d] his own brand of industrial justice.” Enter. Wheel, 363 U.S. at 597, 80 S.Ct. 1358.
The arbitrator here ignored the unambiguous language of the severance provision. In awarding severance benefits, the arbitrator was “not construing an ambiguous contract term, but rather was imposing a new obligation.” Keebler Co. v. Milk Drivers & Dairy Employees, Local No. 471, 80 F.3d 284, 288 (8th Cir.1996). I therefore respectfully dissent.

. The court perceives ambiguity in the severance provision by imagining a scenario of a “brief pause” between the seller’s closure of a plant and the buyer’s reopening of it. The court then asserts that Alcan is reduced to arguing that there is a meaningful distinction between (1) a seamless transition from buyer to seller and (2) the court’s imagined "brief pause” scenario. Ante at 842. Since both parties agree that there was a seamless transition from Alcan to Bemis, the question of whether the court’s “brief pause” scenario amounts to a complete and permanent closure under the severance provision is not before the court. Thus, we need not decide this question. Even so, the court’s ability to imagine a hard case does not make the severance provision ambiguous in this easy case.

. The district court affirmed this finding, and Alcan did not appeal this ruling.